UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JACKSON LEWIS LLP
One North Broadway
White Plains, New York 10601
(914) 328-0404
  Greg Riolo (GR 1634)
  Michael A. Frankel (MF 9712)
*Attorneys for Defendant Mediacom Communications*
*Corporation*
--------------------------------------------------------------------------X

MIRIAM BAUZA,           :
                 :
        Plaintiff,     : Case No. 07 CIV. 6542 (CLB)
                 :
   - against -         :
                 :
MEDIACOM COMMUNICATIONS    :
CORPORATION,          :
                 :
        Defendant.   :
--------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MEDIACOM COMMUNICATIONS CORPORATION'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................... 1

STATEMENT OF FACTS........................................................................................1

    I.      PLAINTIFF'S EMPLOYMENT WITH MEDIACOM................................ 2

    II.     PLAINTIFF'S CANCER DIAGNOSIS AND TREATMENT....................... 3

    III.    MEDIACOM GRANTED PLAINTIFF'S REQUEST FOR
          SHORT TERM DISABILITY LEAVE AND BENEFITS........................... 3

    IV.    DEFENDANT HIRED REGINA BURGOS FOR THE
          NEWLY-CREATED POSITION OF SENIOR PAYROLL
          MANAGER....................................................................................... 4

    V.     PLAINTIFF RECEIVED $3,978.16 IN EXCESS STD
          BENEFITS DURING HER DISABILITY LEAVE.................................. 4

    VI.    MEDIACOM TERMINATED PLAINTIFF'S EMPLOYMENT
          AS A RESULT OF HER CONDUCT.................................................. 5

POINT I
    MEDIACOM IS ENTITLED TO SUMMARY JUDGMENT
    BECAUSE NO GENUINE ISSUE OF MATERIAL FACT
    EXISTS AS TO PLAINTIFF'S DISABILITY CLAIMS..................................... 6

POINT II
    MEDIACOM SHOULD BE GRANTED SUMMARY
    JUDGMENT ON PLAINTIFF'S DISABILITY
    DISCRIMINATION CLAIMS...................................................................... 8

    A.  Plaintiff Cannot Establish A *Prima Facie*
         Case of Discrimination.......................................................................9

    B.  Mediacom Has Articulated Legitimate Non-Discriminatory
         Reasons For Its Decision To Terminate Plaintiff's Employment.......................11

    C.  Plaintiff Cannot Rebut Mediacom's Legitimate, Nondiscriminatory
         Reasons For Its Decision To Terminate Plaintiff's Employment
         Or Otherwise Show Disability Discrimination Was The Real
         Reason For Her Termination..................................................................12

CONCLUSION........................................................................................... 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456 (2d Cir. 2001).................................7

Anderson v. Liberty Lobby Inc., 477 U.S. 242, 106 S. Ct. 2505 (1986).........................6, 7

Brierly v. Deer Park Union Free School District, 359 F. Supp. 2d 275 (E.D.N.Y. 2005)...........................................................................................................................11

Campbell v. Alliance National Inc., 107 F. Supp. 2d 234 (S.D.N.Y. 2000) ....................13

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986) .........................................6

Crews v. Trustees of Columbia University, 452 F. Supp. 2d 504 (S.D.N.Y. 2006) .........12

Dister v. Continental Group, Inc., 859 F.2d 1108 (2d Cir. 1988) .....................................11

Donaldson v. Merrill Lynch & Co. Inc., 794 F. Supp. 498 (S.D.N.Y. 1992) ....................7

Ekwegbalu v. Central Parking System, 97 Civ. 9477, 2000 U.S. Dist. LEXIS 13545 (S.D.N.Y. Sep. 21, 2000)..............................................................................13

Fierro v. Saks Fifth Avenue, 13 F. Supp. 2d 481 (S.D.N.Y. 1998)..................................12

Fisher v. Vassar College, 114 F.3d 1332 (2d Cir. 1997)......................................................9

Gallo v. Prudential Residential Services, L.P., 22 F.3d 1219 (2d Cir. 1994).....................7

Giordano v. City of New York, 274 F.3d 740 (2d Cir. 2001) ......................................6, 7, 9

Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14 (2d Cir. 1995)...........7

Greenway v. Buffalo Hilton Hotel, 143 F.3d 47 (2d Cir. 1998) .........................................8

Heilwil v. Mount Sinai Hospital, 32 F.3d 718 (2d Cir. 1994).............................................8

Knight v. U.S. Fire Insurance Co., 804 F.2d 9 (2d Cir. 1986) ...........................................6

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348 (1986)....................................................................................................................7

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973)… ....................8

Meiri v. Dacon, 759 F.2d 989 (2d Cir. 1985)...................................................................8

Mesnick v. General Electric, 950 F.2d 816 (1st Cir. 1991)..............................................11

Morrison v. Potter, 363 F. Supp. 2d 586 (S.D.N.Y. 2005)................................................6

Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S. Ct. 1775 (1989).............................13

Reeves v. Johnson Controls World Serv. Inc., 140 F.3d 144 (2d Cir. 1998) ....................8

Reeves v. Sanderson Plumbing Products Inc., 530 U.S. 133, 120 S. Ct. 2097
    (2000)...........................................................................................................................9

Roge v. NYP Holdings, Inc., 257 F.3d 164 (2d Cir. 2001) ...............................................12

Song v. Ives Laboratory, Inc., 957 F.2d 1041 (2d Cir. 1992) ...........................................8

St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S. Ct. 2742 (1993) ............................9

Stanojev v. Ebasco Services Inc., 643 F.2d 914 (2d Cir. 1981) .......................................11

Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 1010 S. Ct. 1089
    (1981)........................................................................................................................8, 9

Wernick v. Federal   Reserve Bank, 91 F.3d 379 (2d Cir. 1996) .......................................7

Wooley v. Broadview Networks Inc., 01-CV-2526, 2003 U.S. Dist. LEXIS 2716
    (S.D.N.Y. Feb. 26, 2003)............................................................................................8

## FEDERAL STATUTES

42 U.S.C. § 12101 et seq. ...........................................................................................1, 8, 9

Fed. R. Civ. P. 56(c) .........................................................................................................6

Fed. R. Civ. P. 56(e) .........................................................................................................7

Fed. R. Evid. 801(c)..........................................................................................................15

## STATE STATUTES

N.Y. Exec. L. § 290 et seq. .......................................................................................1, 8, 9

## PRELIMINARY STATEMENT

Defendant, Mediacom Communications Corporation (hereinafter "the Company" or "Mediacom"), respectfully submits this Memorandum of Law in Support of its Motion For Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure seeking dismissal of Plaintiff's Complaint. Plaintiff Miriam Bauza ("Plaintiff") brings this action pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA") and the New York Human Rights Law, N.Y. Exec. L. § 290 et seq. ("NYHRL") in connection with the termination of her employment with Mediacom. Specifically, Plaintiff alleges that Mediacom unlawfully terminated her employment due to her disability (cancer) in violation of the ADA and NYHRL. (Riolo Aff. Ex. A).[1] In fact, Mediacom terminated Plaintiff's employment because she knowingly received short term disability payments far greater than what she was entitled to and never informed anyone at Mediacom. Summary judgment is warranted because Plaintiff cannot submit evidence showing an inference of discrimination or that Mediacom's legitimate, nondiscriminatory reason for the termination of her employment was a pretext for intentional discrimination.

## STATEMENT OF FACTS

The relevant undisputed facts are set forth more fully in Mediacom's accompanying Local Civil Rule 56.1 Statement Of Material Facts As To Which There Is No Genuine Issue To Be Tried, to which the Court is respectfully referred. For the Court's convenience, a brief summary of the facts relating to the instant motion is set forth below. The facts alleged by Plaintiff are presumed to be true *solely* for the purposes of the instant motion.

---

[1]    "Riolo Aff. Ex. __" refers to documents attached to the Affirmation of Greg Riolo, Esq. ("Riolo Aff.") submitted in support of Defendant's motion for summary judgment. A true and correct copy of Plaintiff's Complaint is attached to the Riolo Aff. as Exhibit A.

1

I.    **PLAINTIFF'S EMPLOYMENT WITH MEDIACOM.**

On October 31, 2005, Plaintiff commenced her employment with Mediacom as a Payroll Supervisor. (Riolo Aff. Ex C).[2]  Plaintiff's job responsibilities included reviewing the Company's field office payroll records, verifying that the records were accurate, making any necessary changes and transmitting the records to the Company's payroll processor to make the payments. (Pl. Dep. 87).[3]  After Plaintiff commenced employment with Mediacom, she attended a mandatory employee orientation where she received a copy of the Company's Anti-discrimination and Sexual Harassment Policy and Mediacom's Employee Handbook. (Riolo Aff. Exs. E & F).[4]  As clearly stated in its anti-discrimination policy, Mediacom is an equal opportunity employer and prohibits discrimination in hiring, promotion, or other employment decisions on the basis of race, sex, religion, national origin, age, or *non-job related disability*. (Riolo Aff. Ex. E).

Mediacom further provides leave under the Family and Medical Leave Act ("FMLA") for eligible employees and Personal Leaves of Absence for employees who do not qualify for FMLA leave. (See Riolo Aff. Ex. F, at pp. 62-64).  Since Plaintiff had not been employed for one year she was not entitled to family and medical leave.  She was, however, entitled to personal leave under Mediacom's policy, up to a maximum of thirty days.  In fact, Plaintiff was provided over sixty days of personal leave. (See Riolo Aff. Ex. F, at p. 64).

---

[2]    A true and correct copy of Plaintiff's Employment Application, identified as Exhibit E in Plaintiff's deposition, is attached to the Riolo Aff. as Exhibit C.

[3]    "Pl. Dep.___" refers to the transcript of Plaintiff's deposition conducted on March 19, 2008.  Copies of all pages of transcript cited herein and in Defendants Rule 56.1 Statement are attached to the Riolo Aff. as Exhibit D.

[4]    A true and correct copy of Mediacom's Anti Discrimination and Sexual Harassment Policy, identified as Exhibit H in Plaintiff's deposition, is attached to the Riolo Aff. as Exhibit E.  True and correct copies of the relevant pages of Mediacom's Employee Handbook, identified as Exhibit F in Plaintiff's deposition, are attached to the Riolo Aff. as Exhibit F.

## II.    PLAINTIFF'S CANCER DIAGNOSIS AND TREATMENT.

In 1995, prior to her employment with Mediacom, Plaintiff was diagnosed with breast cancer. (Pl. Dep. 21). At that time, Plaintiff underwent treatment for breast cancer which resulted in a mastectomy of her left breast. (Id.). In or about February 2006, during her employment with Mediacom, Plaintiff was re-diagnosed with breast cancer. (Pl. Dep. 22). On April 10, 2006, Plaintiff underwent a lumpectomy to treat the recurring cancer, for which Plaintiff was absent for three (3) days. (Pl. Dep. 99-101). In May, 2006 Plaintiff underwent a second lumpectomy and took three (3) days of leave to recuperate from the procedure. (Id.). On both occasions Plaintiff received full pay for the work days she missed. (Pl. Dep. 101).

## III.    MEDIACOM GRANTED PLAINTIFF'S REQUEST FOR SHORT TERM DISABILITY LEAVE AND BENEFITS.

Despite the two lumpectomies, Plaintiff required a second mastectomy. (Pl. Dep. 99). In June 2006, Plaintiff took disability leave to undergo and recover from the necessary surgery. (Pl. Dep. 106). On June 7, 2006, Plaintiff filed a claim for short term disability (hereinafter "STD") benefits pursuant to the STD policy as outlined in Mediacom's Employee Handbook. (Pl. Dep. 107; Riolo Aff. Ex. F, at pp. 85-87).[5] Mediacom is self-insured and utilizes the services of an outside corporation, Aetna, to administer and process its STD plan. (Burgos Dep. 19).[6] Aetna was responsible for issuing benefit checks directly to employees receiving STD payments. (Burgos Dep. 19). Mediacom reimburses Aetna for all benefit payments made by Aetna to its employees. (Burgos Dep. 19).

Mediacom's STD policy states that an employee's STD benefits will begin after seven (7) calendar days of disability. (Riolo Aff. Ex. F, at pp. 88-87). After the seven day

---

[5]    A true and correct copy of Plaintiff's Notice and Proof of Claim of Disability Form, identified as Exhibit J in Plaintiff's deposition, is attached to the Riolo Aff. as Exhibit G.

[6]    "Burgos Dep." refers to the transcript of Regina Burgos's deposition conducted on March 17, 2008. Copies of all pages of transcript cited herein and in Defendant's Rule 56.1 Statement are attached to the Riolo Aff. as Exhibit H.

waiting period, an employee is entitled to 66 2/3% of his or her regular weekly wage. (Id.). On her STD application, Plaintiff's weekly salary was $807.69. (Pl. Dep. 107; Riolo Aff. Ex. G). Thus, Plaintiff was entitled to receive approximately $538.46 per week under Mediacom's STD policy. (Riolo Aff. Ex. F, at pp. 85-87; Pl. Dep. 107).[7] In fact, Plaintiff received a weekly check for disability benefits until she returned to work on August 7, 2006 which was approximately double her normal weekly salary. (Pl. Dep. 109).[8]

## IV.    DEFENDANT HIRED REGINA BURGOS FOR THE NEWLY-CREATED POSITION OF SENIOR PAYROLL MANAGER.

Prior to June 2006, Mediacom wanted to reorganize its Payroll Department to achieve a higher efficiency level and advertised for the position of Senior Payroll Manager. (Burgos Dep. 39-40). Plaintiff did not apply for the Senior Payroll Manager position. (Pl. Dep. 120). In June 2006, prior to Plaintiff's leave, Mediacom hired Ms. Regina Burgos, an experienced payroll executive, as Senior Payroll Manager. (Burgos Dep. 40). Ms. Burgos was Plaintiff's direct supervisor. (Burgos Dep. 27).

## V.    PLAINTIFF RECEIVED $3,978.16 IN EXCESS STD BENEFITS DURING HER DISABILITY LEAVE.

Ms. Burgos audits Mediacom's benefit payments paid by Aetna as part of her job duties. (Burgos Dep. 20-24). While reviewing the benefit payment statement in or about October/November 2006, Ms. Burgos noticed that Plaintiff received STD benefits during her leave in the net amount of $1,114.04 (gross amount was $1,445.38) a week from July 5, 2006 to August 1, 2006, which was more than triple the amount of STD benefits that Plaintiff was

---

[7]    Pursuant to Mediacom's STD policy, Plaintiff received $170.00 per week as required under New York State Disability Law, and should have received $368.46 from Aetna, totaling $538.46 per week.
[8]    A true and correct of Aetna's letter confirming Plaintiff's STD overpayment, identified as Exhibit T in Plaintiff's deposition, is attached to the Riolo Aff. as Exhibit I.

entitled to receive. (Pl. Dep. 156-163; Riolo Aff. Ex. J).[9] Plaintiff was only entitled to $368.46 per week in STD benefits from Aetna during her leave. Accordingly, Plaintiff received $3,978.16 in STD overpayments. (Riolo Aff. Ex. I).

Ms. Burgos reported this discrepancy to Ms. Mills. (Burgos Dep. 58-59). Ms. Mills instructed Steven Rubin,[10] to contact Aetna to review the situation and confirm the audits. (Mills Dep. 16).[11] Aetna provided Mediacom with copies of the checks Plaintiff received which confirmed Plaintiff's receipt of substantial overpayments in STD benefits. (Mills Dep. 39-40).

On November 15, 2006, Ms. Mills, Ms. Burgos, and Mr. Michulski met with Plaintiff regarding the excess benefits she received while on disability leave. (Pl. Dep. 164). Plaintiff admitted that when she received her second STD check (the first check was retroactive and covered a number of weeks in June), she knew Aetna had miscalculated her disability payment. (Pl. Dep. 167). Plaintiff claimed she had contacted Aetna in June 2006, who informed her that the benefit payment was correct. (Pl. Dep. 166-67). Plaintiff admitted she did not inform Joe Michulski or any other Mediacom employee, either during her leave or upon her return, that she received excess STD payments during her leave. (Pl. Dep. 167-68). Despite Plaintiff's claims, Aetna had no record of Plaintiff reporting her excess benefits. (Mills Dep. 47-50).

VI.   **MEDIACOM TERMINATED PLAINTIFF'S EMPLOYMENT AS A RESULT OF HER CONDUCT.**

On or about November 21, 2006, Ms. Mills attended a meeting with Ms. Italia Commisso-Weinand, Mediacom's Senior Vice President of Human Resources, and Mr. Paul

---

[9]     True and correct copies of Plaintiff's STD checks, identified as Exhibits M-S in Plaintiff's deposition, are collectively attached to the Riolo Aff. as Exhibit J.

[10]    Steven Rubin is an employee of Mercer Benefits and, at all relevant times, functioned as an intermediary between Mediacom and Aetna. (Mils Dep. 16).

[11]    "Mills Dep." refers to the transcript of Judy Mills' deposition conducted on March 17, 2008. Copies of all pages of transcript cited herein and in Defendant's Rule 56.1 Statement are attached to the Riolo Aff. as Exhibit K.

Gillert, Mediacom's Vice President of Human Resources, regarding Plaintiff's receipt of the overpayments and her failure to inform any Mediacom employee about the overpayments. (Mills Dep. 50-51).    At that meeting, Ms. Mills, Ms. Commisso-Weinand and Mr. Gillert decided to terminate Plaintiff's employment as a result of her failure to report the excessive STD benefits.   Plaintiff's conduct was particularly egregious because she held a position of trust as Payroll Supervisor. (Mills Dep. 54).  On November 28, 2006, Mediacom terminated Plaintiff's employment. (Mills Dep. 62-64).

**POINT I**

**MEDIACOM IS ENTITLED TO SUMMARY JUDGMENT BECAUSE NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO PLAINTIFF'S DISABILITY CLAIMS.**

Mediacom is entitled to summary judgment because "there is no 'genuine issue of material fact' and the undisputed facts warrant judgment for [Defendant] as a matter of law." See Morrison v. Potter, 363 F. Supp. 2d 586, 589 (S.D.N.Y. 2005) (McMahon, J.) (citing Fed. R. Civ. P. 56(c) and Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256, 106 S. Ct. 2505 (1986)). The principal purpose of summary judgment is to dispose of meritless claims before engaging in a frivolous and costly trial.  See Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986).  The Supreme Court has explained that summary judgment is properly regarded, not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action.  Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986).

A district court must grant summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is "material" if it "might affect the outcome of the suit under the governing law." Giordano v. City of New York, 274 F.3d 740, 746 (2d Cir. 2001) (quoting Anderson, 477

6

U.S. at 248, 106 S. Ct. at 2510 (1986)). An issue of fact is "genuine" where the "evidence is such that a reasonable jury could return a verdict for the non moving party." Giordano 274 F.3d at 746-47. To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). This is particularly true where, as here, the non-moving party bears the burden of proof at trial. Donaldson v. Merrill Lynch & Co. Inc., 794 F. Supp. 498, 503 (S.D.N.Y. 1992). Instead, a non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In addition, a plaintiff cannot produce sufficient evidence by reliance on unsupported assertions, a scintilla of evidence, mere speculation or conjecture as to the true nature of the facts, or purely conclusory allegations of discrimination, absent any concrete particulars. Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995); Wernick v. Fed. Reserve Bank, 91 F.3d 379, 382 (2d Cir. 1996).

In determining whether to grant summary judgment, the Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52, 106 S. Ct. at 2505. The "moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Services, L.P., 22 F.3d 1219, 1223-24 (2d Cir. 1994). The Second Circuit and the Supreme Court have emphasized that employment discrimination claims should not be treated differently from other ultimate questions of fact. See Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001).

> It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases. This Court has stated that: "the salutary purposes of summary judgment

7

> – avoiding protracted, expensive and harassing trials - apply no
> less to discrimination cases than to . . . other areas of litigation."

Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).

Plaintiff cannot submit admissible evidence that would permit a reasonable fact finder to conclude that Plaintiff was terminated as a result of her disability. The undisputed material facts demonstrate that Plaintiff was terminated as a result of her failure to report the overpayment in STD benefits she received while on disability leave. Plaintiff has not and cannot offer any evidence to raise an issue of fact to warrant a trial. Therefore, Mediacom's motion for summary judgment should be granted and Plaintiff's Complaint should be dismissed in its entirety.

**POINT II**

**MEDIACOM SHOULD BE GRANTED
SUMMARY JUDGMENT ON PLAINTIFF'S
DISABILITY DISCRIMINATION CLAIMS.**

The undisputed material facts demonstrate that Plaintiff cannot establish her disability discrimination claims as a matter of law. Disability discrimination claims pursuant to the ADA and NYHRL are analyzed under the same burden shifting analysis used to analyze Title VII claims. See Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir. 1998); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).[12] Under the McDonnell Douglas burden shifting analysis, "the plaintiff has the [initial] burden of proving by a preponderance of evidence a *prima facie* case of discrimination." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 1010 S. Ct. 1089, 1093 (1981); Heilwil v. Mount Sinai Hospital, 32 F.3d

---

[12]    The legal standards for evaluating discrimination claims under the ADA and NYHRL are essentially the same, except to the extent that the New York Statutes support a broader definition of disability, a distinction not relevant here since Defendant is not contesting Plaintiff's disability. See Song v. Ives Lab., Inc., 957 F.2d 1041, 1048 (2d Cir. 1992); Wooley v. Broadview Networks Inc., 01-cv-2526, 2003 U.S. Dist. LEXIS 2716, at *24 (S.D.N.Y. Feb. 26, 2003) (citing Reeves v. Johnson Controls World Serv. Inc., 140 F.3d 144, 147 (2d Cir. 1998). Copies of all unreported cases cited on LEXIS are attached to the Riolo Aff. as Ex. M.

718, 721-22 (2d Cir. 1994). To make out a *prima facie case* under the ADA, a plaintiff must establish:

> (1) [the employer] is subject to the ADA; (2) [the plaintiff] was disabled within the meaning of the ADA; (3) [the plaintiff] was otherwise qualified to perform the essential functions of his [or her] job, with or without a reasonable accommodation; and (4) [the plaintiff] suffered an adverse employment action because of his [or her] disability.

Giordano, 274 F.3d at 747.

Second, "if the plaintiff succeeds in proving a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the [adverse employment decision]." Burdine, 450 U.S. at 253, 101 S. Ct. at 1093. The burden on the defendant at this phase is one of production rather than persuasion. See Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 2106 (2000); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507, 113 S. Ct. 2742, 2756 (1993). Any legitimate, non-discriminatory reason will rebut the presumption triggered by the *prima facie* case. Fisher v. Vassar College, 114 F.3d 1332, 1335-36 (2d Cir. 1997). Third, if the employer meets this burden, the plaintiff must demonstrate by a preponderance of the evidence that the employer's presumptively valid explanation was a pretext for intentional discrimination. Fisher, 114 F.3d at 1335.

As explained herein, there is no material fact for trial with respect to Plaintiff's claims for disability discrimination under the ADA and the NYHRL. Plaintiff cannot establish that her termination occurred under circumstances giving rise to an inference of discrimination, nor can she show that Mediacom's legitimate, non-discriminatory reasons for her termination was a pretext for intentional discrimination. Thus, Mediacom is entitled to summary judgment.

### A.    Plaintiff Cannot Establish A *Prima Facie* Case of Discrimination.

Plaintiff cannot establish the fourth prong of a *prima facie* case – that her termination occurred under circumstances giving rise to an inference of discrimination.

Mediacom terminated Plaintiff's employment because she knowingly accepted STD overpayments and never informed Mediacom at any time. Pursuant to Mediacom's employment policy, Plaintiff was entitled to receive 66 2/3% of her weekly salary, or $538.46 per week ($368.46 from Aetna and $170.00 from New York State) in STD benefits while on disability leave. (Riolo Aff. Exhibit I). Instead, Plaintiff received a *weekly* net check in the amount $1,114.04. (Pl. Dep. 156-163). Further, Plaintiff admitted that following the receipt of her second STD check (the first was a larger retroactive payment) there was "something wrong with the payment." (Pl. Dep. 167). Plaintiff did not inform any of her supervisors that she received a substantial overpayment on this occasion or throughout the remainder of her leave with the remaining payments. (Pl. Dep. 167). In fact, if Ms. Burgos had not reviewed the statements detailing the disability payments paid to Mediacom's employees, the Company would never have discovered the overpayment. Only when confronted about the STD benefits on November 16, 2006 – over three months after her return to work – did Plaintiff admit that she knew at the time she was cashing the checks she was receiving overpayments. (Pl. Dep. 171). Plaintiff also admitted that she never spoke with anyone at the Company at any time about the overpayments. (Pl. Dep. 174). Only after further investigation – including contacting Aetna and further deliberation regarding Plaintiff's failure to act – was her employment terminated. (Mills Dep. 63-64). Plaintiff's actions were compounded by the fact that she was employed in a position of trust in the Payroll Department. (Mills Dep. 50-51).

Furthermore, the Company's action after her announcement that she had cancer belies an inference of discrimination. Throughout Plaintiff's employment, Mediacom accommodated Plaintiff's requests for leave. Plaintiff was routinely granted paid leave whenever her cancer treatment required her to miss work. (Pl. Dep. 99-101). Mediacom also granted Plaintiff's request for STD leave and benefits. (Pl. Dep. 106). Upon her return from

leave in August 2006, Plaintiff continued to receive full pay for any time she missed as result of ongoing treatment. (Burgos Dep. 86-87). From June to August, Plaintiff received over sixty days leave, over and above Company policy. The decision to terminate Plaintiff was a result of Plaintiff's violation of Mediacom's trust. Plaintiff cannot present any admissible evidence linking her termination with any type of discriminatory animus. Further, Plaintiff cannot identify any similarly situated employees whom Mediacom has treated differently in similar circumstances. Thus, Plaintiff cannot establish a *prima facie* case of disability discrimination and Mediacom's motion for summary judgment should be granted.

**B.    Mediacom Has Articulated Legitimate Non-Discriminatory Reasons For Its Decision To Terminate Plaintiff's Employment.**

Even assuming that Plaintiff can establish a *prima facie* case of disability discrimination, Mediacom's decision to terminate Plaintiff's employment was legitimate and non-discriminatory. Plaintiff's termination was proper and justified based on the indisputable fact that she knowingly received $3,978.16 in excess STD payments and failed to inform anyone at Mediacom. An "employee may be discharged on the basis of subjective business judgments, for any reason that is not discriminatory." Stanojev v. Ebasco Servs. Inc., 643 F.2d 914, 921-22 (2d Cir. 1981). An "employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle. It is not a court's role to second-guess an employer's personnel decisions, even if foolish, as long as they are non-discriminatory." Brierly v. Deer Park Union Free School District, 359 F. Supp. 2d 275, 291 (E.D.N.Y. 2005) (internal citations omitted). "Federal courts do not have a roving commission to review business judgments, and may not sit as super personnel departments, assessing the merits – or even the rationality – of employers' non-discriminatory business decisions." Id. (citing Mesnick v. General Elec., 950 F.2d 816, 825 (1st Cir. 1991)); Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988).

11

As Payroll Supervisor in Mediacom's Payroll Department, Plaintiff was in a position of trust. Plaintiff held a similar position with her prior employer, for whom she worked more than twenty years. (Pl. Dep. 70). Plaintiff did not inform any Mediacom employee about the STD overpayment even though over three (3) months had passed since her return from disability leave. Mediacom's Senior Vice President, Vice President and Director of Human Resources collectively decided to terminate Plaintiff's employment. Plaintiff's egregious conduct warranted termination because Plaintiff held a position of trust in the Payroll Department, Plaintiff knew she received substantial STD overpayments and Plaintiff failed to inform anyone at the Company that she unjustly retained the excess STD payments. Plaintiff's conduct constitutes a legitimate, non-discriminatory reason for her termination. See Roge v. NYP Holdings, Inc., 257 F.3d 164, 169 (2d Cir. 2001) ("it is common sense and entirely lawful for an employer to select for termination an employee who the employer in good faith believes recently engaged in fraud relating to the employment"); see also Crews v. Trustees of Columbia University, 452 F. Supp. 2d 504 (S.D.N.Y. 2006) (an employee's theft or dishonesty is a legitimate, non discriminatory reason for his or her termination); Fierro v. Saks Fifth Avenue, 13 F. Supp. 2d 481, 489 (S.D.N.Y. 1998) (an employee's fraud is a legitimate non-discriminatory reason for his or her termination).

**C.**    **Plaintiff Cannot Rebut Mediacom's Legitimate, Nondiscriminatory Reasons For Its Decision To Terminate Plaintiff's Employment Or Otherwise Show Disability Discrimination Was The Real Reason For Her Termination.**

Mediacom is entitled to summary judgment because Plaintiff cannot proffer any evidence demonstrating that Mediacom's reasons for terminating her employment are a pretext for intentional discrimination. Plaintiff alleges that her disability discrimination claim is supported by the following: (i) comments by Regina Burgos after her return from leave, (ii) a change in her job duties after her return, and (iii) comments she overheard relating to

Mediacom's concerns about medical payments made on behalf of new employees. As to the comments by Ms. Burgos, Plaintiff alleges that on one occasion Ms. Burgos informed her that she was not entitled to receive paid leave to attend her doctor's appointments and on another occasion expressed to Plaintiff that she was abusing Mediacom's leave policy when scheduling her chemotherapy sessions. (Pl. Dep. 154). First, Ms. Burgos' personal feelings are irrelevant since she was overruled. When Ms. Burgos' decision not to pay Plaintiff for one day she took off for treatment was brought to the attention of Ms. Burgos' supervisor, Plaintiff received permission to take whatever time off she needed to attend her doctor's appointments, and was assured that she would be paid for any time taken, regardless of the fact that she had no accrued time. (Pl. Dep. 101). Thus, Mediacom's generous treatment of Plaintiff prior to, during and after her STD leave belies any inference of discrimination.

Further, and more importantly, Ms. Burgos had no involvement in the decision to terminate Plaintiff. Ms. Mills, Ms. Commisso-Weinand and Mr. Gillert made the decision to terminate Plaintiff's employment without any input by Ms. Burgos. (Mills Dep. 54). Ms. Burgos' alleged comments regarding Plaintiff's leave are, at most, stray comments by a non-decision maker and insufficient to establish pretext. See Price Waterhouse v. Hopkins, 490 U.S. 228, 277, 109 S. Ct. 1775, 1805 (1989); Ekwegbalu v. Central Parking System, 97 Civ. 9477, 2000 U.S. Dist. LEXIS 13545, at *10-11 (S.D.N.Y. Sept. 21, 2000); Campbell v. Alliance Nat'l Inc., 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000).

Second, Plaintiff also alleges that Mediacom's alleged reduction in her responsibilities is evidence of discrimination. (Riolo Aff. Exhibit A, at ¶ 19). However, there is no factual basis to support this conclusion. Plaintiff's job responsibilities were changed, not reduced, to meet Mediacom's business requirements. Plaintiff was hired by Mediacom as a Payroll Supervisor. As a Payroll Supervisor, Plaintiff's responsibilities included reviewing

13

Mediacom's field office payroll records, verifying that the records were accurate, making any necessary changes and transmitting the records to Mediacom's payroll processor to make the payments. (Pl Dep. 87). Ms. Burgos, an experienced payroll executive, was hired to head the Payroll Department in June 2006, a position Plaintiff did not apply for. (Burgos Dep. 39-40; Pl. Dep. 120). As the head of the Payroll Department, Ms. Burgos was Plaintiff's direct supervisor. (Burgos Dep. 27). Ms. Burgos observed that Plaintiff's job performance did not meet her expectations and that Plaintiff did not have a thorough understanding of payroll tasks. (Burgos Dep. 34). For example, Ms. Burgos asked Plaintiff to "gross up" the payroll checks. (Burgos Dep. 37). A term of art in payroll management, "grossing up" a pay check requires that all deductions be removed from the employee's salary before the check is issued. Plaintiff did not perform this basic task correctly and claimed that she did not know how to issue the checks according to Ms. Burgos' instructions. (Burgos. Dep. 37; Pl. Dep. 146-148). On another occasion, Plaintiff incorrectly inputted salary information on a spreadsheet that Ms. Burgos had asked her to prepare. (Burgos Dep. 37).

In order to more effectively utilize Plaintiff's skills, Mr. Michulski, to whom Plaintiff previously reported, suggested that her job duties be adjusted to enable her to assist him in coordinating Mediacom's 401-k loan program. (Michulski Dep. 12).[13] Plaintiff was responsible for processing and administering Mediacom's 401-k loan program. Her salary, benefits, and title remained the same. (Michulski Dep. 12). Her new job responsibilities were very similar in nature and did not constitute a material change in Plaintiff's responsibilities. Thus, Defendant's request that Plaintiff perform new job duties following her return from leave is insufficient to establish that Defendant terminated Plaintiff's employment due to her disability.

---

[13]    "Michulski Dep." refers to the transcript of Joe Michulski's deposition conducted on March 17, 2008. Copies of all pages of transcript cited herein and in Defendant's Rule 56.1 Statement are attached to the Riolo Aff. as Exhibit L.

Finally, Plaintiff surmises that she was terminated because Mediacom did not want to pay the medical benefits of new employees. (Pl. Dep. 189-191). Plaintiff bases her allegations on conversations she overheard during her employment. (Id.). Plaintiff claims that several Mediacom employees stated that "the big boss" did not want to pay medical benefits for any new Mediacom employees. (Id.). As a threshold matter, these alleged comments are inadmissible hearsay. See Fed. R. Evid. 801(c) ("hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). Furthermore, the undisputed facts do not support Plaintiff's allegations. Plaintiff's experience and treatment by the Company belie any such animus. During her employment, Plaintiff received STD benefits and was paid for all work days she missed as a result of her cancer treatment. (Pl. Dep. 101). It was not until the Company discovered the STD overpayments and investigated the issue that Plaintiff was terminated. Simply put, there are no facts to rebut the Company's legitimate, non-discriminatory reasons which prompted Plaintiff's termination. Accordingly, there is no issue of fact to be tried and Plaintiff's Complaint should be dismissed.

## CONCLUSION

Plaintiff's Complaint and deposition testimony reveal nothing more than conclusory allegations of disability discrimination. Plaintiff has failed to demonstrate that her retention of STD overpayments was not the real reason for her termination. Accordingly, for the reasons cited above, Defendant respectfully requests this Court grant its motion for summary judgment and dismiss Plaintiff's Complaint in its entirety.

Respectfully submitted,

JACKSON LEWIS LLP
One North Broadway, Suite 1502
White Plains, New York 10601
(914) 328-0404
(914) 328-0541 (facsimile)

Greg Riolo (GR 1634)
Michael A. Frankel (MF 9712)

ATTORNEYS FOR DEFENDANT
MEDIACOM COMMUNICATIONS
CORPORATION

Dated: White Plains, New York
       May 9, 2008

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

MIRIAM BAUZA,                                  :
                                               :
                        Plaintiff,             : Case No. 07 CIV. 6542 (CLB)
                                               :
          - against -                          :
                                               :
MEDIACOM COMMUNICATIONS                        :
CORPORATION,                                   :
                                               :
                        Defendant.             :
-------------------------------------------------------------X

### CERTIFICATE OF SERVICE

A copy of the foregoing Memorandum of Law was filed via ECF and was served

via First Class mail, this 9th day of May, 2008 on counsel for Plaintiff at the address below:

> Craig M. Bonnist, Esq.
> Bonnist & Cutro, LLP
> 31 Purchase Street, Suite 3-1
> Rye, New York 10580
> *Attorneys for Plaintiff*

_____
Greg Riolo