**BONNIST & CUTRO, LLP**
800 Westchester Avenue, Ste. S-332
Rye Brook, New York 10573
(914) 921-4820
*Attorneys for Plaintiff*
Craig M. Bonnist (CB3245)
James J. Cutro (JC7174)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- :

MIRIAM BAUZA,                                                         :

                        **Plaintiff,**                                :

                  - against -                                       :        **Case No.: 07 CIV  6542 (CLB)**

MEDIACOM COMMUNICATIONS CORPORATION,                                 :

                  **Defendant.**                              :

-------------------------------------------------------------------

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**On the Brief:**


**Craig M. Bonnist**
**James J. Cutro**

**BONNIST & CUTRO, LLP**
800 Westchester Avenue, Ste. S-332
Rye Brook, New York 10573
(914) 921-4820 ph.
(914) 921-4823 fx.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

SUMMARY OF ARGUMENT ............................................................................... 2

STATEMENT OF FACTS .................................................................................... 3

STANDARD FOR AWARDING SUMMARY JUDGMENT ................................... 10

PLAINTIFF'S CLAIM SURVIVES SUMMARY JUDGMENT ................................ 11

    A.    Plaintiff Establishes A *Prima Facie* Case of Discrimination ..................... 11

    B.    Plaintiff Can Rebut Defendant's Proffered Business Reason ................... 19

CONCLUSION ................................................................................................... 21

## TABLE OF AUTHORITIES

### Cases

*Alexander v. Computer Sciences Corp.*, 392 F.Supp.2d 229, 235 (D. Conn. 2005).................... 16

*American Casualty Co. v. Nordic Leasing, Inc.*, 42 F. 3d 725, 728 (2d Cir. 1994) .................... 10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)................................................... 10

*Boyd v. City of Albany, 2001 WL 263054 (N.D.N.Y.)*................................................................. 11

*Byrnie v. Town of Cromwell, bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001)............................. 20

*Celotex Corp. v. Catrett*, 447 U.S. 317, 322-23, 106. S. Ct. 2548 (1986)................................... 10

*Fierro v. Saks Fifth Ave., 13 F.Supp.2d 481, 490 (S.D.N.Y. 1998)* ........................................... 18

*Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1224 (2d Cir. 1994) ...................... 10, 11

*In re Chateugay Corp., 10 F.3d 944, 957 (2d Cir. 1993)* ............................................................ 10

*Landisi v. Beacon Community Dev. Agency, 180 A.D.2d 1000, 580 N.Y.S.2d 577, 579 (3d Dept. 1992)* .......................................................................................................................................... 10

*McLee v. Chrysler Corp.*, 109F. 3d 130, 135-37 (2d Cir. 1997) ................................................. 10

*Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 464 (2d Cir. 1989)* .................................... 11

*Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148, 122 S. Ct. 2097, 2109 (2000)* .. 19

*Rotuba Extruders v. Ceppos, 46 N.Y.2d 223, 413 N.Y.S.2d 141, 395 N.E.2d 1068 (Ct. of App. 1978)* .......................................................................................................................................... 10

*Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) ..................................................... 11

*United States v. Rioux*, 97 F.3d 648, 661 (2nd Cir.1996).............................................................. 13

*Wooley v. Broadview Networks Inc.*, 01-cv-2526. 2003 U.S. Dist. LEXIS 2716, at *16 (S.D.N.Y. Feb. 26, 2003) ............................................................................................................................ 15

*Yang v. Radix Apparel, Inc., 2000  WL 1886584 at *4 (S.D.N.Y. 2000)* .................................. 21

*Zipf v. American Tel. & Tel. Co.*, 799 F.2d 889 (3rd Cir. 1986)................................................... 12

### Statutes

§296 of the New York State Executive Law ................................................................................... 1

42 U.S.C. § 12101 ......................................................................................................................... 1

**BONNIST & CUTRO, LLP**
800 Westchester Avenue, Ste. S-332
Rye Brook, New York 10573
(914) 921-4820
*Attorneys for Plaintiff*
Craig M. Bonnist (CB3245)
James J. Cutro (JC7174)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- :

MIRIAM BAUZA,
                            :

              **Plaintiff,**         :

                            :        **Case No.: 07 CIV  6542 (CLB)**

     **- against -**                :

MEDIACOM COMMUNICATIONS CORPORATION,   :

            **Defendant.**       :

                            :

-------------------------------------------------------------------------

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Plaintiff, Miriam Bauza, through her attorneys, Bonnist & Cutro, LLP, submits this memorandum of law in opposition to the motion by defendant, under FRCP R. 56, to dismiss plaintiff's complaint. Plaintiff seeks relief as a result of the unlawful discrimination by defendant against plaintiff because of her disability in violation of the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. § 12101, et seq. (the "ADA"), and in violation of §296 of the New York State Executive Law (the "Executive Law"). Plaintiff respectfully submits that she has raised triable issues of fact as to all matters raised by defendant.

## SUMMARY OF ARGUMENT

Defendant subjected plaintiff to disability discrimination in violation of the ADA and the Executive Law because when plaintiff informed defendant of her cancer diagnosis, which thereafter resulted in the need to take disability leave to receive extensive and expensive medical treatment for breast cancer, she was immediately subjected to an adverse change in her treatment at work that culminated in her discharge. Plaintiff attributes this sudden change to the fact that defendant is self insured and would be responsible for paying for all her disability and medical benefits which, as a cancer patient, are unfortunately ongoing and expensive.

One critical piece of evidence of defendant's discriminatory intent is a statement plaintiff heard made by defendant's Chief Financial Officer that defendant's Founder, Chairman, and Chief Executive Officer, is not comfortable paying for new employees' benefits — a statement that was thereafter twice repeated to her by her direct supervisor. Further evidence of defendant's discriminatory motive are the following: (1) plaintiff's job duties and responsibilities were adversely changed upon her return from disability leave; (2) plaintiff's new supervisor constantly harassed her, including making it more stressful for her to take time off from work for chemotherapy treatments and get paid for those days; (3) defendant's senior management and human resources personnel ostracized her upon return from disability leave; (4) defendant's human resources department never investigated allegations of discriminatory treatment complained of by plaintiff; (5) defendant terminated plaintiff for a claimed trust violation but neither discharged nor even disciplined numerous other employees with similar alleged infractions — one of whom is in the same department and alleged "position of trust" as Bauza, best illustrating that the discharge decision was pretext under circumstances giving rise to the reasonable inference of discrimination; (6) defendant never considered other similar scenarios with other employees in making the discharge decision; (7) defendant never investigated

2

plaintiff's claim that she was told twice by Aetna that the check she deposited, and was terminated for depositing, was correct; and (8) the Chief Financial Officer who knew of the concerns of the Founder, Chairman and Chief Executive Officer, about paying for plaintiff's benefits, and the Founder's wife, were the two individuals who made the ultimate discharge decision.

Despite the foregoing behavior, in order to persuade the Court to grant the ultimate sanction of summary judgment, defendant's dismiss or completely ignore plaintiff's allegations — many of which are undisputed — and speciously mischaracterize their discriminatory conduct as ordinary business decisions. As the Court is well aware, plaintiff is entitled to all inferences and factual assertions to be drawn in her favor. Accordingly, as discussed below, defendant's motion should be denied because plaintiff can demonstrate a *prima facie* case of disability discrimination and rebut defendant's proffered asserted business reason for her discharge under circumstances giving rise to the reasonable inference that the actual reason was discriminatory.

## STATEMENT OF FACTS[1]

### 1. Bauza's Prior Employment and Medical History

In 1995, prior to her employment with Mediacom, Bauza was diagnosed with breast cancer and underwent treatment which resulted in a mastectomy of her left breast. (Cutro Aff.[2] Ex. A, Bauza Dep. 21). Prior to her employment with defendant, Bauza was employed for the same company for thirty-one (31) years, the final seventeen (17) of which she was the Payroll Manager. (Riolo Aff. Ex. A, Complaint ¶ 9).

---

[1] Set forth herein is a brief summary of the facts that are set forth in detail in Plaintiff's Local Civil Rule 56.1 Statement of Additional Material Facts submitted in opposition to the motion.

[2] Cutro Aff. refers to the Affirmation of James J. Cutro, Esq. submitted in opposition to defendant's motion, and the exhibits attached thereto.

### 2. *Bauza is Hired by Defendant*

On October 31, 2005, Bauza commenced her employment with Mediacom as a payroll supervisor, reporting to Joseph Michulski (Riolo Aff. Ex. C; Ex. L, Michulski Dep. 12).

### 3. *Bauza's First Learns of Defendant's Discriminatory Intent*

Four or five weeks into her employment with Mediacom, Bauza overheard Mark Stephan, the Chief Financial Officer, say to another employee that the "big boss" — Rocco B. Commisso, Founder, Chairman and Chief Executive Officer of Mediacom — is not comfortable paying medical bills for someone just coming aboard as opposed to someone that has been with the Company with five years of service. (Cutro Aff. Ex. A, Bauza Dep. 189; Riolo Aff. Ex. F).

Michulski made the same type of comment to Bauza on two occasions. (Cutro Aff. Ex. A, Bauza Dep. 190).

Defendant is a self-insured entity that is responsible for paying its employees' medical costs as well as disability benefits. (Riolo Aff., Ex. B, ¶ 17).

### 4. *Bauza is Diagnosed with Cancer*

On February 13, 2006, Bauza had a biopsy of a suspicious lump, which confirmed the diagnosis of breast cancer. (Cutro Aff. Ex. A, Bauza Dep. 21).

### 5. *Bauza Files for Disability*

On June 7, 2006, Bauza applied for short term disability (hereinafter "STD") to undergo a mastectomy and to recover from the necessary cancer treatment. (Riolo Aff., Ex. D, Pl. Dep. 99, 106, 107; Ex. F, at pp. 85-87).

Aetna was responsible for issuing benefit checks to employees receiving STD payments and Mediacom reimburses Aetna for all benefit payments made on its behalf. (Riolo Aff. Ex. H, Burgos Dep. 19).

On June 7, 2006, Bauza underwent a mastectomy. (Riolo Aff. Ex. D, Pl. Dep. 21-22; 99-101).

After the mastectomy, Bauza started chemotherapy, which treatment she was undergoing upon her return to work. (Riolo Aff. Ex. A, Complaint ¶ 13).

### 6. *Bauza Questions Disability Payment – Aetna Advises Payment Is Correct*

In early July 2007, during Bauza's leave, and shortly after receiving her initial disability check, it appeared to her that there was something wrong with the check because the amount of money was not reflecting the correct days of pay. (Cutro Aff. Ex. A, Bauza Dep. 54, 166-67). Bauza immediately contacted an agent at Aetna regarding the mistake. (Cutro Aff. Ex. A, Bauza Dep. 54, 166-67). Aetna assured Bauza two times on the call that there was no error, and that the payment was correct. (Cutro Aff. Ex. A, Bauza Dep. 54, 166-67). Bauza then left two voice mail messages for Michulski, her supervisor, to call her, but he never called her back. (Cutro Aff. Ex. A, Bauza Dep. 167-68).

### 7. *Bauza Returns to Work*

Bauza returned to work without accommodation on August 7, 2006 and was able to fulfill all the essential functions of her job as payroll supervisor. (Riolo Aff. Ex. A, Complaint ¶ 15). Bauza was required to receive chemotherapy treatment once every three weeks and as a result of those days she was unable to work, she worked longer hours on other work days to make up for the time. (Cutro Aff. Ex. A, Bauza Dep. 132, 199; Riolo Aff. Ex. A, Complaint ¶ 14). On some occasions. Bauza worked in the morning, and then underwent chemotherapy treatment. In either case she returned to work the following day after treatment, notwithstanding the fact that she was often ill at work, including episodes of vomiting, diarrhea and constipation. (Cutro Aff. Ex. A, Bauza Dep. 193; Riolo Aff. Ex. A, Complaint ¶ 14).

**8.  *Bauza's Supervisor and Senior Human Resources Personnel Ostracize Her Upon Return from Disability Leave.***

After returning from disability leave, Bauza noticed that senior management started to treat her differently; in particular, Judy Mills, Paul Gillert, and Italia Commisso-Weinand (Cutro Aff. Ex. A, Bauza Dep. 192-93, 199, 200-201).

**9.  *Defendant Restructures Plaintiff's Department While She was on Leave***

Upon her return from leave, Bauza no longer reported to Michulski but to Regina Burgos, and Gladys Falto no longer reported to Bauza. (Cutro Aff. Ex. C, Burgos Dep. 27, 36-38; Ex. A, Bauza Dep. 201).

**10.  *Bauza's New Supervisor Constantly Harasses Her***

Burgos immediately started to harass Bauza because of her disability, making it more stressful for her to attend chemotherapy treatment appointments as well as get paid for those days she sought treatment.  (Cutro Aff. Ex. A, Bauza Dep. 131-134; Ex. C, Burgos Dep. 82-91). Rather telling of defendant's discriminatory motive, Burgos testified that she knew that requiring Bauza to come into work under those circumstances caused stress to Bauza. (Cutro Aff. Ex. C, Burgos Dep. 83).  In addition, when Bauza questioned Burgos about not being paid for a day she took off for a medical appointment, Burgos said Bauza was ***taking advantage of the company***. (Cutro Aff. Ex. A, Bauza Dep. 133-34).  In addition to the foregoing discriminatory conduct, Burgos' conduct in general towards Bauza in routine work matters was inappropriate, with Bauza being addressed in a sarcastic manner, and on occasion, her being screamed at by Burgos. (Cutro Aff. Ex. A, Bauza Dep. 142-43, 145).

**11.  *Bauza Complains to Human Resources***

As a result of this behavior, Bauza complained to Mills in Human Resources of the problems with Burgos, including her accusing Bauza of abusing company time by going for

6

chemotherapy treatments. Mills sent her to see Brian Walsh, Burgos' supervisor, but Mills did not look any further into the matter. (Cutro Aff. Ex. A, Bauza Dep. 153; Ex. B, Mills Dep. 66-67). Walsh advised her she would be paid for the day, but Burgos' harassing treatment of her did not change thereafter. (Cutro Aff. Ex. A, Bauza Dep. 153-54).

### 12. *Bauza's Job Duties and Responsibilities are Further Changed*

After complaining about Burgos, Mediacom changed the status of Bauza's employment to Benefits Supervisor 401(k) Loans, which Bauza considered an unfavorable transfer and a demotion, as it limited her responsibilities. (Cutro Aff. Ex. A, Bauza Dep. 126-130).

### 13. *Defendant's Claimed Reason for Terminating Bauza*

In or about October 2006, during her review of the Aetna statements, Burgos discovered that Bauza received excess STD payments during her leave. (Riolo Aff., Ex. Burgos Dep. 58). On November 14, 2006, Burgos, Michulski and Mills called Bauza into a meeting, wherein Mills explained that it was her understanding that plaintiff had received an overpayment of disability benefits. (Riolo Aff., Ex. D, Pl. Dep. 164).

### 14. *Bauza Advises Defendant of Her Discussions with Aetna*

Bauza informed Mills that she had contacted Aetna about the apparent discrepancy because she felt the payment was incorrect and was told twice that it was correct. (Cutro Aff. Ex. A, Bauza Dep. 167).

### 15. *Defendant Does Not Conduct Any Investigation*

After the meeting, Mills does not specifically recall if she, or anyone else at Mediacom, asked Michulski if Bauza tried to contact him when she was out on leave. (Cutro Aff. Ex. B, Mills Dep 56-57). Moreover, neither Mills nor anyone on her behalf, requested phone records to

establish if Bauza called Aetna in early June to question the payment she received. (Cutro Aff. Ex. B, Mills Dep 58-59).

Mediacom admits that the payment error was solely caused by Aetna.[3] (Riolo Aff. Ex. I).

### 16. Bauza is Terminated

Mills recommended Bauza's termination to Gillert and Commisso-Weinand despite the fact that Mediacom does not have any policy for an employee to follow in the event the employee receives an overpayment of STD benefits. (Cutro Aff. Ex. B, Mills Dep 45, 54).  The ultimate termination decision was made by Commisso-Weinand and Marc Stephan, Chief Financial Officer.  (Cutro Aff. Ex. B, Mills Dep 28, 54).

At the meeting to determine Bauza's discharge, there was no discussion of any other form of discipline other than termination even though Mediacom utilizes a handbook with a progressive discipline policy. (Cutro Aff. Ex. B, Mills Dep 60-61).

At no time in the decision making process as to Bauza's discipline was there discussion of similar fact patterns that had arisen with other employees and what discipline was applied in those situations. (Cutro Aff. Ex. B, Mills Dep 12, 54; 79-81).

On November 28, 2006, Bauza was called into work and told by Mills that she was terminated because she failed to inform Mediacom of the overpayment of her benefits by Aetna. (Cutro Aff. Ex. B, Mills Dep 53-54).  Plaintiff asked Mills whether Aetna had made similar errors with respect to any other employee, to which she responded that it was "none of [her] business". (Riolo Aff. Ex. A; Complaint ¶ 25).

---

[3] On November 20, 2006, Bauza received a letter from Aetna confirming the overpayment in the amount of $3978.15 and was offered by Aetna the option to remit the overpayment in installments; however, she returned the entire overpayment by lump sum. (Riolo Aff. Ex A; Complaint ¶ 23).

### 17. Other Similarly Situated Employees Who Were Not Disciplined

Gladys Falto worked in the same department with Bauza, also reporting to Burgos. (Cutro Aff. Ex. C, Burgos Dep. 27, 36-38). Falto was in a similar "position of trust" as Bauza. (Cutro Aff. Ex. B, Mills Dep. 78). While Bauza was still in Mediacom's employ, Burgos believed that Falto was submitting time sheets to be paid for overtime hours she may not have actually worked. (Cutro Aff. Ex. C, Burgos Dep. 47-49). Burgos reported this issue to Mills. (Cutro Aff. Ex. C, Burgos Dep. 47-49). Mills admitted that employee theft of time — reporting for time not worked to get paid — is a serious issue; however, this did not even warrant an investigation by defendant (Cutro Aff. Ex. B, Mills Dep. 77-78). Mediacom took no disciplinary action against Falto, despite the serious nature of the claim, which certainly constitutes a breach of her "position of trust". (Cutro Aff. Ex. C, Burgos Dep. 48-49).

In addition to Falto, Michulski raised two other issues of overpayments of STD benefits by Aetna to employees of Mediacom to Mills and neither her nor Gillert even recommended disciplinary action against these employees, let alone a summary discharge without investigation. (Cutro Aff. Ex. B, Mills Dep. 71-74, 80; Ex. D, Michulski Dep. 16-17).

Aetna reviewed its history of overpayment of STD payments to Mediacom employees and found eleven (11) other incidents of overpayments to Mediacom employees who accepted the overpayments. (Records of overpayments of STD benefits by Aetna are attached as Ex. G to Cutro Aff.). These overpayments were in amounts from $3219.66 to $39.94. (Cutro Aff., Ex. G). It is undisputed that none of the employees whom were the subject of the overpayments were even disciplined by defendant. (Cutro Aff. Ex. B, Mills Dep. 71-74, 80). Only Bauza was disciplined for depositing any overpayment of STD benefits. (Cutro Aff. Ex. B, Mills Dep. 71-74, 80). She was discharged.

## STANDARD FOR AWARDING SUMMARY JUDGMENT

Summary judgment is a drastic remedy and should not be granted where there is any doubt as to the evidence of a triable issue of fact, especially where the employer's intent is at issue. *Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1224 (2d Cir. 1994); *Rotuba Extruders v. Ceppos, 46 N.Y.2d 223, 413 N.Y.S.2d 141, 395 N.E.2d 1068 (Ct. of App. 1978)*. Summary judgment is appropriate only where there are no genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *McLee v. Chrysler Corp.*, 109F. 3d 130, 135-37 (2d Cir. 1997). The Court must view the evidence in the light most favorable to the non-moving party and resolve all ambiguities in its favor. *Anderson*, 477 U.S. at 255; *American Casualty Co. v. Nordic Leasing, Inc.*, 42 F. 3d 725, 728 (2d Cir. 1994). The movant bears the burden of demonstrating the absence of evidence to support an essential element of the non-movant's claim. *Celotex Corp. v. Catrett*, 447 U.S. 317, 322-23, 106. S. Ct. 2548 (1986). Consequently, in deciding a motion for summary judgment the non-moving party "is entitled to every favorable inference which can be reasonably drawn from the evidence." *In re Chateugay Corp., 10 F.3d 944, 957 (2d Cir. 1993); Landisi v. Beacon Community Dev. Agency, 180 A.D.2d 1000, 580 N.Y.S.2d 577, 579 (3d Dept. 1992)*. The Court must view the evidence in the light most favorable to the non-moving party and resolve all ambiguities in its favor. *Anderson*, 477 U.S. at 255; *American Casualty Co. v. Nordic Leasing, Inc.*, 42 F.3d 725, 728 (2d Cir. 1994). The movant bears the burden of demonstrating the absence of evidence to support an essential element of the non-movant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106. S. Ct. 2548 (1986). Notably, the court's reluctance to grant summary judgment is no truer than in employment discrimination litigation, where the only direct evidence available often centers on what the defendant-employer allegedly said or did, since the employer will rarely ever admit to

having said or done what is alleged, and third party witnesses are by no means always available. *Boyd v. City of Albany, 2001 WL 263054 (N.D.N.Y.)*. Indeed, employers are rarely so cooperative as to include a notation in the personnel file that they have discriminated. *Id.*; *Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 464 (2d Cir. 1989)*. For these reasons, the Second Circuit has specifically cautioned against dismissing discrimination claims on a motion for summary judgment. Indeed, in *Gallo*, the Court reiterated that discrimination cases require additional considerations due to the absence of direct evidence and that "corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof, which, if believed, would show discrimination." *Id. Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997); *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d at 1224.

## PLAINTIFF'S CLAIM SURVIVES SUMMARY JUDGMENT

For the purposes of this motion, defendant does not dispute that Bauza satisfies the first three elements of a *prima facie* case, but argues that the an adverse employment action did not occur under circumstances giving rise to an inference of disability discrimination, and even if it did, plaintiff cannot rebut defendant's non-discriminatory reasons for terminating Bauza. As set forth below, at the very least, Bauza raises a question of fact that: (1) her termination occurred under circumstances giving rise to an inference of discrimination; and (2) defendant's proffered reason for her termination was a pretext for intentional discrimination.

### A.    Plaintiff Establishes A *Prima Facie* Case of Discrimination

Plaintiff can establish the fourth prong of a *prima facie* case — that her termination occurred under circumstances giving rise to an inference of discrimination.

Upon informing defendant of her cancer diagnosis and the need to take disability leave to receive extensive and expensive medical treatment for breast cancer, Bauza immediately noticed

a change in her treatment at work that culminated in her discharge. (Cutro Aff. Ex. A, Bauza Dep. 192-93, 199, 200-201).

This sudden change can reasonably be attributed to the fact that defendant is self insured and would be responsible for paying for all her disability and medical benefits. This inference can reasonably be drawn from the circumstances surrounding her treatment by defendant, culminating in her discharge by defendant. One fact to consider is the statement Bauza heard made by defendant's Chief Financial Officer, Mark Stephan, who said that defendant's Founder, Chairman and Chief Executive Officer, Rocco Commisso, is not comfortable paying for somebody's benefits that had just come aboard as opposed to somebody who has been there five years — a statement that was thereafter repeated to her by her supervisor Michulski on more than one occasion. (Cutro Aff. Ex. A, Bauza Dep. 189; 190; Riolo Aff. Ex. F). In addition, Commisso is married to the Director of Human Resources, Italia Commisso-Weinand, who with CFO Stephan, made the ultimate decision to terminate Bauza's employment. (Cutro Aff. Ex. B, Mills Dep. 54). The close relationship of the parties certainly raises a fact question as to the reasonable inference which can be drawn as to the discriminatory animus behind Bauza's termination.

Furthermore, contrary to defendant's assertion, this statement is not inadmissible hearsay. Stephan is a decision maker and senior employee of defendant, and anything plaintiff alleges he says, or Commisso, the CEO, may believe, are party admissions, and hence, not hearsay. *Federal Rules of Evidence, R. 801 (d)(2)*. See, *Zipf v. American Tel. & Tel. Co.*, 799 F.2d 889 (3rd Cir. 1986) (where plaintiff relied on supervisor's statements to the effect that defendant was firing plaintiff in order to prevent her from becoming eligible for disability benefits, supervisor's statements were admissible as admissions of defendant's agent because

supervisor was designated to deal with plaintiff regarding termination and spoke within the scope of agency); *United States v. Rioux,* 97 F.3d 648, 661 (2nd Cir.1996) (statements of agents with supervisory power regarding attitudes, intentions or policies of higher-ups in management do concern matters within agent's authority).

In further support, Bauza asserts that after returning from disability leave she noticed that senior management started to treat her differently; in particular, Judy Mills, Paul Gillert, and Italia Commisso-Weinand became short with her in conversation, stopped approaching her during the work day, ignored her, acted indifferently towards her, stopped addressing her with normal greetings of hello and good night, and no longer engaged her in any conversation. (Cutro Aff. Ex. A, Bauza Dep. 192-93, 199, 200, 201)  Certainly the timing of these key decision makers treatment towards Bauza immediately upon her return from disability leave is a material question of fact for the jury, along with all the other allegations of discriminatory animus alleged by plaintiff.

For instance, while Bauza was on disability leave her department was restructured and she no longer reported to Michulski, but to Regina Burgos, and her direct report prior to going on leave, Gladys Falto, no longer reported to her. (Cutro Aff. Ex. C, Burgos Dep. 27, 36-38; Ex. A, Bauza Dep. 201).

Further, after complaining about Burgos' discriminatory conduct (discussed in detail below), Mediacom changed her title from "Payroll Supervisor" to Benefits Supervisor 401(k) Loans, which Bauza considered an unfavorable transfer and a demotion, as it limited her responsibilities. (Cutro Aff. Ex. A, Bauza Dep. 126-130).  Certainly plaintiff can argue that these actions by defendant are evidence of its discriminatory intent.

The foregoing are not the only suspect actions by defendant. Burgos, Bauza's direct supervisor, admitted she made it more stressful for Bauza to take off time from work for chemotherapy treatments and get paid for these days. (Cutro Aff. Ex. A, Bauza Dep. 131-134; Ex. C, Burgos Dep. 82-91). Bauza testified that when she asked Burgos why she was not paid for a day she went to chemotherapy, especially since she was working more than eight hours a day, sometimes twelve hours, Burgos told her the only way she could get paid for the day was to come into work, even for an hour. (Cutro Aff. Ex. A, Bauza Dep. 132). As a result of that explanation from her supervisor, the next time Bauza had a medical appointment concerning her disability, she sent an e-mail to Burgos explaining she would be in the office in the morning but out of the office after 9:15 AM. (Cutro Aff. Ex. A, Bauza Dep. 132; E-mails annexed thereto as Ex. F). Burgos' responded by e-mail, "Why did you come in at all?" and similarly told her in person, in a negative tone, 'Why did you bother to come.' (Cutro Aff. Ex. A, Bauza Dep. 133, 140-41; Ex. F). Burgos admits to making the statement and sending the e-mail. (Cutro Aff. Ex. C, Burgos Dep. 82-84). Rather telling of defendant's discriminatory motive, Burgos also admitted that having Bauza come into work under those circumstances would have stressed Bauza. (Cutro Aff. Ex. C, Burgos Dep. 83).

Even further telling of defendant's discriminatory animus is the fact that when Bauza questioned Burgos about not being paid for the day she took off for a medical appointment, Burgos accused Bauza *of taking advantage of the company*. (Cutro Aff. Ex. A, Bauza Dep. 133-34). In addition to the foregoing conduct, in dealing with Bauza on routine work matters Burgos was generally sarcastic, and would scream at her. (Cutro Aff. Ex. A, Bauza Dep. 142-43, 145).

Because of this evidence of discrimination defendant argues in its memorandum it must not be accountable for the admitted discriminatory conduct of supervisor Burgos since she was

not a decision maker and her comments were merely "stray remarks". This legal analysis, however, does not apply here, where the utterer is a direct supervisor and there was not a "stray remark" but a continued and consistent pattern of alleged discriminatory animus and comments by a supervisor leading right up to her termination. This type of conduct by a direct supervisor not directly involved in termination decision that transpires up to the termination could be found by a reasonable jury to support an inference that discrimination was the true reason behind defendant's actions. *Wooley v. Broadview Networks Inc.,* 01-cv-2526. 2003 U.S. Dist. LEXIS 2716, at *16 (S.D.N.Y. Feb. 26, 2003); Riolo Aff. as Ex. M). Rarely will an employer in an employment discrimination case document intentional discrimination. Thus, plaintiff can certainly argue, at a minimum, that Burgos' repeated alleged discriminatory conduct was telling of defendant's discriminatory animus, especially where, as here, plaintiff is also arguing defendant did nothing to abate it after plaintiff complained, but permitted the discriminatory conduct to continue. *Id.*

Indeed, Bauza complained to Mills in Human Resources of the problems with Burgos, including her accusing Bauza of abusing company time by going for chemotherapy treatments. Mills sent her to see Brian Walsh, Burgos' supervisor, but Mills in human resources did not look further into the matter of disability discrimination. (Cutro Aff. Ex. A, Bauza Dep. 153; Ex. B, Mills Dep. 66-67). Bauza submits that Mills, the Director of Human Resources, had a duty to investigate the matter, not merely send her to Burgos' boss to discuss getting paid, since that was only the symptom of the discriminatory conduct, not the cause. Thus, the fact that Walsh advised her she would be paid for the day is not an indication of any real attempt by defendant to address Burgos' discriminatory conduct. Indeed, Burgos' harassing treatment of her did not change

thereafter because Mills did not address the root cause of the issue Bauza complained — disability discrimination. (Cutro Aff. Ex. A, Bauza Dep. 153-54).

After enduring the foregoing discriminatory treatment, Burgos, Michulski and Mills called Bauza into a meeting, wherein Mills explained that it was her understanding that plaintiff had received an overpayment of disability benefits. (Riolo Aff., Ex. D, Pl. Dep. 164). Bauza informed Mills that she had contacted Aetna about the apparent discrepancy because she felt the payment was incorrect and was told twice that it was correct. (Cutro Aff. Ex. A; Bauza Dep. 54, 166-67). Mills, however, did not look further into Bauza's explanation that she called Aetna or that Aetna told her the payment was correct. Further, neither Mills nor anyone else at Mediacom ever asked Michulski if Bauza tried to contact him when she was out on leave, nor were phone records requested from Aetna to establish if Bauza called Aetna in early June to question the payment she received and was told the payment was correct. (Cutro Aff. Ex. B, Mills Dep. 56-59). Under these facts, Bauza's allegation that her employer's lack of an investigation that preceded the proffered business reason for discharge raises an issue of fact as to pretext that must be decided by a jury. *Alexander v. Computer Sciences Corp.*, 392 F.Supp.2d 229, 235 (D. Conn. 2005). This is especially true here where Bauza was discharged without investigation while Falto's claimed theft of overtime pay was disregarded by defendant without investigation. Nevertheless, Mills recommended Bauza's termination to Gillert and Commisso-Weinand despite the fact that Mediacom did not have any policy for an employee to follow in the event the employee receives an overpayment of STD benefits. Further, defendant admits that the payment error was solely caused by Aetna.[4] (Riolo Aff. Ex. I; Cutro Aff. Ex. B, Mills Dep. 45, 54).

---

[4] On November 20, 2006, Bauza received a letter from Aetna confirming the overpayment in the amount of $3978.15 and was offered by Aetna the option to remit the

The ultimate termination decision was then made by Commisso-Weinand and Marc Stephan, Chief Financial Officer. (Cutro Aff. Ex. B, Mills Dep 28, 54), one of whom is alleged to believe that the CEO did not want to pay out benefits to short-term employees and the other is the wife of the CEO. It is undisputed that in making the recommendation to terminate Bauza, Mills did not consider the affect on Bauza from the recent surgery or the medication Bauza was on when she discovered the possible error with her check in June 2006, which factors Bauza testified altered her ability to respond and deal with the "check" situation considering her more immediate concerns of her health and recovery. (Cutro Aff. Ex. B, Mills Dep. 58-59).   It is also undisputed that at the meeting to determine Bauza's discharge, there was no discussion of any other form of discipline other than termination even though Mediacom utilizes a handbook with a progressive discipline policy. (Cutro Aff. Ex. B, Mills Dep. 60-61).   These facts alone provide the basis to defeat a motion for summary judgment. But these are not the only allegations that must be taken as true on this motion, nor are they even the most compelling evidence available.

Most telling of the discriminatory motive behind Bauza's termination is the undisputed fact that at no time in the decision making process as to Bauza's discipline was there discussion of similar fact patterns that had arisen with other employees and what discipline was applied in those situations. (Cutro Aff. Ex. B, Mills Dep. 12, 54; 79-81). In fact, when Bauza asked Mills whether Aetna had made similar errors with respect to any other employee, she responded that it was "none of [her] business". (Riolo Aff. Ex. A; Complaint ¶ 25).   Subsequently, because the evidence provided by Aetna demonstrates that this same error has occurred on numerous additional occasions, without even any reprimand, let alone discharge, Mills' reason for avoidance of an answer is obvious.  Although defendant terminated Bauza for a claimed trust

---

overpayment in installments; however, she returned the entire overpayment by lump sum. (Riolo Aff. Ex. A; Complaint ¶ 23).

violation, defendant never disciplined numerous other employees with similar alleged infractions, including an employee in Bauza's department. It is well settled that the court must look to this type of evidence to determine pretext. *Fierro v. Saks Fifth Ave., 13 F.Supp.2d 481, 490 (S.D.N.Y. 1998).* A jury must therefore consider the difference in treatment between Bauza, who was discharged, and all other employees engaged in similar conduct, none of whom were even disciplined.

Indeed, it is undisputed that Gladys Falto worked in the same department with Bauza, in an identical position of trust. (Cutro Aff. Ex. B, Mills Dep. 78; Ex. C, Burgos Dep. 27, 36-38). While Bauza was still in Mediacom's employ, Burgos testified that she believed Falto submitted time sheets to be paid for overtime hours she may not have actually worked. (Cutro Aff. Ex. C, Burgos Dep. 47-49). Burgos reported this issue to Mills. (Cutro Aff. Ex. C, Burgos Dep. 47-49). Mills admitted that employee theft of time — reporting for time not worked to get paid — is a serious issue. (Cutro Aff. Ex. B, Mills Dep. 77-78). Nevertheless, Mediacom took no disciplinary action against Falto, nor did it even care to investigate. (Cutro Aff. Ex. C, Burgos Dep. 48-49). The foregoing raises an issue of fact for the jury as to the defendant's animus for terminating plaintiff since an employee in the same department in the same position of trust was not terminated, or disciplined or investigated for a similar "trust" violation.

In addition to Falto, Michulski testified as to two other issues of overpayments of STD benefits by Aetna to employees of Mediacom that he reported to Mills, but neither her nor Gillert recommended disciplinary action against these employees. (Cutro Aff. Ex. B, Mills Dep. 71-74, 80; Ex. D, Michulski Dep. 16-17).

In addition, Aetna reviewed its history of overpayment of STD payments to Mediacom employees and found <u>eleven (11)</u> other incidents of overpayments to Mediacom employees who

kept the overpayments. (Records of overpayments of STD benefits by Aetna are attached as Ex. G to Cutro Aff.). These overpayments were in amounts from $3219.66 to $39.94. (Cutro Aff., Ex. G). One such overpayment of $3219.66 was paid to the employee for the period February 6, 2006 through March 19, 2006. (Cutro Aff., Ex. G). On June 11, 2007, over fifteen months later, this money was not returned by the employee and Aetna sent out a notice for repayment. (Cutro Aff., Ex. G). This employee was never disciplined by defendant. (Cutro Aff. Ex. B, Mills Dep. 71-74, 80). In fact, it is undisputed that none of the employees who accepted and kept the overpayments were disciplined by defendant. (Cutro Aff. Ex. B, Mills Dep. 71-74, 80). Only Bauza, the cancer patient, was ever disciplined — terminated — for accepting the overpayment of STD benefits. (Cutro Aff. Ex. B, Mills Dep. 71-74, 80).

The foregoing allegations raise several issues of fact for the jury to determine whether the defendant's proffered reason for terminating plaintiff was merely a pretext for discrimination especially where an employee in the same department in the same position of trust was not terminated for a "trust" violation and other employees who received overpayments and did not voluntarily repay them were not disciplined.

### B.    Plaintiff Can Rebut Defendant's Proffered Business Reason

Defendant next argues that Bauza cannot rebut its non-discriminatory explanation for its termination decision. It is well settled that a discrimination plaintiff need not present evidence of discrimination independent of her *prima facie* case, and summary judgment is not appropriate when a plaintiff's *prima facie* case, combined with evidence to find that the employer's justification is false, could permit the trier of fact to conclude that unlawful discrimination occurred. *Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148, 122 S. Ct. 2097, 2109 (2000)*. As just discussed above in Point 1 A, Bauza has set forth a myriad of evidence, each of

which standing alone could rebut the defendant's claimed non-discriminatory conduct, but certainly taken together more than raise an inference of discrimination for a jury to consider. A combination of factors, any of which judged on their own would be much less compelling, can provide sufficient evidence to allow a reasonable jury to conclude that defendant's explanation for an employment decision was a pretext for impermissible discrimination. *See, Byrnie v. Town of Cromwell, bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001).

Further, *Rogue, Crews,* and *Fierro*, the cases defendant relies upon to demonstrate that it properly exercised its business judgment to terminate Bauza for not reporting her check are distinguishable. Indeed, in these cases the employees all admitted to outright fraud or theft and none of them presented any evidence of pretext whatsoever to raise an issue as to their employers' motives. In the instant case, Bauza did not admit to fraud. Quite the contrary, she agreed with her employer that she thought the check was wrong. She then inquired of the company's agent that administered the plan for the defendant and was twice assured the payment was correct. She then left a voice mail for her supervisor to discuss the issue but he never returned her call. In addition, unlike the plaintiffs in the cases defendant relies, Bauza was not terminated for theft or fraud, but for only reporting the incident to its agent, Aetna, and not defendant. She was then terminated, while her co-workers, including Falto and eleven (11) other employees who accepted overpayments of STD payments, none of whom are cancer patients, were not ever disciplined. Finally, Bauza sets forth a litany of allegations surrounding the defendant's termination decision that raise an issue of pretext, many of which are undisputed and concern all the individuals involved in her termination decision.

The foregoing evidence is sufficient for plaintiff to rebut defendant's business justification for its decision. Moreover, the fact that the parties' versions of events are materially

20

different indicates that summary judgment is not appropriate and it is for a jury to determine whether plaintiff can establish defendant discriminated against her. *Yang v. Radix Apparel, Inc., 2000 WL 1886584 at *4 (S.D.N.Y. 2000).*

## CONCLUSION

There is a question of material fact that Mediacom intentionally discriminated against plaintiff on account of her disability and/or perceived disability in violation of the ADA and the Executive Law by denying her equal terms and conditions of employment and by terminating her from employment. Accordingly, defendant's motion should be denied in its entirety.

Dated: Rye Brook, New York
      May 30, 2008

                            **BONNIST & CUTRO, LLP**

                        By: _____
                           James J. Cutro (JC7174)
                           *Attorneys for Plaintiff*
                           800 Westchester Avenue, Suite S-332
                           Rye Brook, New York 10573
                           (914) 921-4820

TO:
Greg Riolo, Esq.
Jackson Lewis, LLP
One North Broadway, Suite 1502
White Plains, New York 10601

21