UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JACKSON LEWIS LLP
One North Broadway
White Plains, New York 10601
(914) 328-0404
     Greg Riolo (GR 1634)
     Michael A. Frankel (MF 9712)
*Attorneys for Defendant Mediacom*
*Communications Corporation*
------------------------------------------------------------------------X

MIRIAM BAUZA,                   :
                                :

               Plaintiff,     : Case No. 07 CIV. 6542 (CLB)
                                :

     - against -                   :
                                :

MEDIACOM COMMUNICATIONS CORPORATION,  :
                                :

              Defendant.    :
------------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN**
**SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

POINT I
   PLAINTIFF HAS NOT ESTABLISHED A *PRIMA FACIE* CASE OF DISABILITY
   DISCRIMINATION. ...............................................................................................................1

      A.   Plaintiff Is Not Similarly Situated To The Other Mediacom Employees Who
           Received Aetna Overpayments. .............................................................................. 1

      B.   Plaintiff's Conduct Is Distinguishable From Any Suspicions Of Dishonesty Against
           Former Employee Gladys Falto. .............................................................................. 6

POINT II
   DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF
   CANNOT PROVE THAT MEDIACOM'S PROFFERED REASON FOR HER
   TERMINATION IS A PRETEXT FOR INTENTIONAL DISABILITY DISCRIMINATION.
   ...................................................................................................................................... 7

      A.   Plaintiff's Purported Evidence Of Pretext Is In Fact A Series Of Conclusory
           Statements Unsupported By Facts. ........................................................................... 8

      B.   Plaintiff's Opinion That Her Termination Was Too Harsh A Penalty For Her
           Fraudulent And Dishonest Conduct Is Irrelevant And Insufficient To Defeat
           Defendant's Motion For Summary Judgment. .......................................................... 11

CONCLUSION ...................................................................................................................... 13

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Alexander v. Computer Sciences Corp.*, 293 F. Supp. 2d 299 (D. Conn. 2005) ............... 11

*Alfano v. Costello*, 294 F.3d 365 (2d Cir. 2002) ................................................................ 9

*Bickerstaff v. Vassar College*, 196 F.3d 435 (2d Cir. 1999) ............................................. 10

*Brown v. Henderson*, 257 F.3d 246 (2d Cir. 2001) ............................................................ 9

*Carpenter v. City of Torrington*, 03-cv-9194, 2004 U.S. App. LEXIS 11534 (2d
Cir. Jun. 10, 2004) .............................................................................................................. 9

*Davis v. New York*, 316 F.3d 93 (2d Cir. 2002) ................................................................. 8

*Graham v. Long Island Railroad*, 230 F.3d 34 (2d Cir. 2000) ...................................... 2, 3

*Khan v. Costco Wholesale Inc.*, 99-cv-3944, 2001 U.S. Dist. LEXIS 21797
(E.D.N.Y. Dec. 13, 2001) ................................................................................................... 3

*Khan v. Federal Reserve Bank*, 02-cv-8893, 2005 U.S. Dist. LEXIS 1541
(S.D.N.Y. Feb. 2, 2007) ...................................................................................................... 9

*Lediju v. New York City Dep't of Sanitation*, 95-cv-9942, 1997 U.S. Dist. LEXIS
12406 (S.D.N.Y. Mar. 26, 1997) ....................................................................................... 8

*Lee v. Connecticut Dept. Motor Vehicles*, 02-cv-2214, 2006 U.S. Dist. LEXIS
17542 (D. Conn. Mar. 30, 2006) ....................................................................................... 2

*Lucibello v. Yale-New Haven Hosp.*, 03-cv-0814, 2005 U.S. Dist. LEXIS 3604
(D. Conn. Mar. 10, 2005) ................................................................................................... 3

*Meiri v. Dacon*, 759 F.2d 989 (2d Cir. 1989) .................................................................... 8

*Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 122 S. Ct. 2098 (2000) .............. 7

*Sanders v. New York City Human Resource Admin.*, 361 F.3d 749 (2d Cir. 2004) ............ 9

*Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000) ........................................................... 8

*Shabat v. Blue Cross Blue Shield*, 925 F. Supp. 977 (W.D.N.Y. 1996), aff'd.
without op., 108 F.3d 1370 (2d Cir. 1997) ........................................................................ 9

*Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60 (2d Cir. 1997) ...................................2

*Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87 (2d Cir. 2001) .......................2

*Warren v. Quality Services Corp.*, 603 F. Supp. 1174 (W.D.N.Y. 1985) ...........................9

## PRELIMINARY STATEMENT

Plaintiff Miriam Bauza's (hereinafter referred to as "Plaintiff") opposition papers do not change the determinative issues on this motion – namely, that: (1) Plaintiff has failed to establish a *prima facie* case of intentional disability discrimination, specifically, that she was terminated as a result of her disability; (2) Defendant had a legitimate business reason for its employment decisions with regard to Plaintiff; and (3) Plaintiff has not offered any evidence that Defendant Mediacom Communications Corporation's (hereinafter referred to as "Mediacom" or "Defendant") legitimate reason for terminating Plaintiff's employment was a pretext for discrimination.  For the reasons set forth herein and in Defendant's principal memorandum of law, Defendant's Motion for Summary Judgment should be granted in its entirety.[1]

## POINT I

### PLAINTIFF HAS NOT ESTABLISHED A *PRIMA FACIE* CASE OF DISABILITY DISCRIMINATION.

Mediacom's summary judgment motion should be granted because Plaintiff has not established a *prima facie* case of employment discrimination.  Specifically, Plaintiff has not asserted any facts supporting her claim that she suffered an adverse employment action with respect to any decisions prior to her termination or that her termination was as a result of her disability.

### A.    Plaintiff Is Not Similarly Situated To The Other Mediacom Employees Who Received Aetna Overpayments.

Despite Plaintiff's reference in her opposition papers to *other* Mediacom employees who received overpayments from Aetna, these employees are not similarly situated to

---

[1]    To avoid burdening the Court with duplicative information and arguments contained within this and Defendant's principal memorandum, Defendant limits its reply to issues raised in Plaintiff's opposition papers. Where Defendant does not reply, it relies on its principal moving papers in support of its Motion for Summary Judgment.

1

Plaintiff and, as such, Mediacom's treatment of (or failure to discipline) these employees does not support Plaintiff's *prima facie* case. While it is true that a plaintiff may raise an inference of discrimination by demonstrating that the employer subjected her to disparate treatment, that is, treated her less favorably than a similarly situated employee outside her protected group, Plaintiff's opposition papers and reference to these other employees does not raise any such inference. See Graham v. Long Island Railroad, 230 F.3d 34, 40 (2d Cir. 2000). Plaintiff's attempted comparisons are insufficient to defeat Defendant's motion for summary judgment because she is not similarly situated to these other employees who received short term disability ("STD") overpayments.

"To be 'similarly situated,' the individuals with whom [the plaintiff] attempts to compare herself must be similarly situated in all material respects." Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997). "What constitutes 'all material respects' . . . must be judged based on (1) whether the plaintiff and those she maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." Graham, 230 F.3d at 40; see also Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 94 (2d Cir. 2001) (alleged comparators not similarly situated where plaintiff, like other employees, failed to produce new business, but, unlike other employees, submitted reports late, submitted poorly prepared reports and failed to provide leadership); Lee v. Connecticut Dept. Motor Vehicles, 02-cv-02214, 2006 U.S. Dist. LEXIS 17542 (D. Conn. Mar. 30, 2006) (alleged comparators not similarly situated because they were charged with different, less severe offenses than the plaintiff and only the plaintiff was found guilty of the charged conduct).[2]

---

[2]    Copies of all unreported cases cited on LEXIS are attached to the Riolo Reply Aff. as Ex. I.

Where the claim of disparate treatment is based on inconsistent disciplinary practices, as Plaintiff alleges in the instant case, a plaintiff is required "to show that similarly situated employees who went undisciplined engaged in comparable conduct." Graham, 230 F.3d at 40; see also Lucibello v. Yale-New Haven Hosp., 03-cv-0814, 2005 U.S. Dist. LEXIS 3604, at *16 (D. Conn. Mar. 10, 2005) ("In cases involving disparate treatment with regard to discipline, the plaintiff must show that the conduct of the other employee was of comparable seriousness."). In the instant case, a material difference exists between Plaintiff and the employees to whom she compares herself because the actions of the comparator employees do not rise to the same level of seriousness as Plaintiff's conduct. See Khan v. Costco Wholesale Inc., 99-cv-3944, 2001 U.S. Dist. LEXIS 21797, at *20-21 (E.D.N.Y. Dec. 13, 2001) (holding plaintiff could not establish a *prima facie* case of discrimination by comparing her act of theft to her co-workers because plaintiff did not establish that she and her co-workers had the same supervisor, held the same job title or that their acts of alleged theft were of comparable seriousness).

Plaintiff's opposition papers focus on twelve notices of STD overpayments by Aetna to Mediacom employees. (See Riolo Reply Aff. Exhibits G & H).[3] Plaintiff alleges that Mediacom discriminated against her by terminating her employment while these other twelve "similarly situated" employees who received an overpayment did not suffer an adverse employment action. However, the circumstances regarding the excess STD payments received by the comparator employees are distinguishable from Plaintiff's STD overpayments in several material aspects.

The twelve employees can be classified into two distinct classes. The first class consists of ten of the employees. (See Riolo Reply Aff. Exhibit G). In each of these ten cases,

---

[3] "Riolo Reply Aff." refers to the Affirmation of Greg Riolo, Esq. submitted in support of Defendant's Reply Memorandum of Law in Support of Defendant's motion of summary judgment.

the Mediacom employee in question, while submitting his or her STD application and certification, listed an estimated date of return to work as required by Aetna. (Mills Aff. at ¶ 4).[4] However, in each of those situations, the employee returned to work earlier than anticipated while his or her payments continued through a later date. (Mills Aff. at ¶ 4). The extra payment amount and the period of overpayment are both referenced in the end of the first paragraph of each Aetna overpayment letter. (Mills Aff. at ¶ 5).   In each of those ten cases, when Aetna was made aware that the employee returned to work, the notice was generated as a matter of routine processing and the overpayment was recouped from the employee.  (Mills Aff. at ¶ 5).   In reviewing the STD payments to the ten employees, the overpayment of STD benefits ranged from \$36.88 to \$649.09 and covered overpayments for between *one* day and ***nine*** days. (Mills Aff. at ¶ 6). None of these overpayments resulted in any of the ten employees receiving STD payments greater than their typical pay in any given week.  (Mills Aff. at ¶ 6). The ten employees who received these minimal overpayments of STD benefits are clearly distinguishable from Plaintiff, an experienced Payroll Supervisor. (Mills Aff. at ¶ 6). Plaintiff received more money during her disability leave than she would have received if she was working. (Mills Aff. at ¶ 7). Further, Plaintiff failed to report her substantial overpayments during the three (3) months after her return to work.  (Mills Aff. at ¶ 7). Accordingly, these ten employees are not similarly situated to Plaintiff in any material respect, and do not raise an issue of fact to preclude summary judgment.

The remaining two incidents of overpayment are also easily distinguishable from Plaintiff's overpayment.  (Mills Aff. at ¶ 8, Riolo Reply Aff. Exhibit H).  In one of the two incidents, the employee was overpaid by a sum of **\$8.35**.  (Mills Aff. at ¶8).  Plaintiff's attempt

---

[4]      "Mills Aff." refers to the Affidavit of Judy Mills in support of Defendant's motion for summary judgment. A true and correct copy of Ms. Mills' affidavit is annexed to the Riolo Aff. as Exhibit A.

4

to compare her thousands of dollars in STD overpayments to an *$8.35* overpayment is simply ridiculous. It was only after Aetna conducted its own audit that it discovered that this employee even received an overpayment.  (Mills Aff. at ¶ 8).

Finally, the last comparator upon which Plaintiff places the most emphasis, not surprisingly, references an overpayment of $2973.00. (Mills Aff. at ¶ 9).  However, despite Plaintiff's assertion, this situation is also distinguishable.  The employee in question was a customer service associate. (Mills Aff. at ¶ 10). The overpayment occurred as a result of an error by a former employee in Mediacom's Human Resources Department, Irene Giannesses.  (Mills Aff. at ¶ 10). Ms. Giannesses inputted the employee's bi-weekly salary as her weekly salary for the purpose of calculating her STD entitlement, leading to the overpayment. (Mills Aff. at ¶ 10). Significantly, the *most important distinction* between Plaintiff and the customer service associate is that the customer service associate *reported* the overpayment to the human resources employee that made the error as soon as she received the overpayment.  (Mills Aff. at ¶ 11). After the overpayment was discovered by Ms. Mills during an audit conducted after Plaintiff's termination, and as a result of Defendant's concerns over Aetna's administrative controls, Mediacom contacted the employee who had received the overpayment.  (Mills Aff. at ¶ 12).  The employee informed Judy Mills that he had reported the overpayment to the local human resources manager.  (Mills Aff. at ¶13).   Ms. Mills spoke with the human resources manager, who had since left the company, who confirmed that the employee had indeed reported the overpayment but that nothing was done by the former human resources manager to recoup the money.  (Mills Aff. at ¶ 13).

This situation is in stark contrast to Plaintiff who not only continued to receive the overpayment throughout her two month leave period, but returned to work for three months in

the Payroll Department without informing anyone at Mediacom about the overpayment. Furthermore, the field employee with whom Plaintiff compares herself was a customer service associate, not a Payroll Supervisor with over twenty years of experience, who knew that she was receiving excess STD payments and reported the overpayment to the local human resources representative. Finally, the customer service employee was not employed in a position of trust. Conversely, Plaintiff held a position of trust in the Payroll Department as she was privy to confidential company and employee information.

Since Plaintiff is not similarly situated to the twelve employees referenced in Plaintiff's opposition papers, the attempted comparison fails to raise a material issue of fact capable of defeating Defendant's motion for summary judgment.

### B.  Plaintiff's Conduct Is Distinguishable From Any Suspicions Of Dishonesty Against Former Employee Gladys Falto.

In addition to the employees who received Aetna overpayments, Plaintiff attempts to draw a comparison between herself and Ms. Gladys Falto, a former employee in Mediacom's Payroll Department. Plaintiff relies on Ms. Regina Burgos' belief that Ms. Falto was guilty of "theft of time." Ms. Burgos suspected that Ms. Falto had either: (1) used overtime to complete an assignment that may not have needed it; or (2) reported overtime that she had not in fact worked. Plaintiff acknowledges that Ms. Burgos reported her suspicions of Ms. Falto's impropriety to Judy Mills, Mediacom's Senior Director of Human Resources. Ms. Mills concluded that there was no way to prove Ms. Burgos' suspicions that Ms. Falto was not working the overtime hours that she claimed to be working. (Mills Aff. at ¶ 15). Mediacom could not base disciplinary action on mere suspicion and, as a result no formal disciplinary action was taken against Ms. Falto. (Mills Aff. at ¶ 15). This is in stark contrast to the present situation. Plaintiff's employment was not terminated based upon on mere suspicion. Rather, it is

undisputed that Plaintiff received $3,978.16 in STD overpayments. (Pl. Dep. 167).[5]  In her deposition, Plaintiff admitted that she knew that the payment was wrong. (<u>Id.</u>).  It is also undisputed that Plaintiff never reported the overpayment to anyone at Mediacom either during or after her return to work.  Thus, Plaintiff cannot establish an inference of discrimination, or demonstrate that Defendant terminated her employment due to her disability, by comparing her dishonesty and theft of company funds to another employee's uncorroborated act of padding her hours.

**POINT II**

**DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF CANNOT PROVE THAT MEDIACOM'S PROFFERED REASON FOR HER TERMINATION IS A PRETEXT FOR INTENTIONAL DISABILITY DISCRIMINATION.**

In her opposition papers, Plaintiff does not challenge that Mediacom has asserted a legitimate business reason for its decision to terminate Plaintiff's employment.  Mediacom's motion for summary judgment should be granted because Plaintiff has not submitted evidence to raise a triable issue of fact that Mediacom's proffered reason for terminating Plaintiff's employment is a pretext for discrimination.

Plaintiff relies on <u>Reeves v. Sanderson Plumbing Prods.</u>, to argue that she need not present evidence of discrimination independent of her *prima facie* case to allow this court to conclude that Mediacom's proffered justification for terminating Plaintiff's employment is a pretext for discrimination. <u>Reeves v. Sanderson Plumbing Prods.</u>, 530 U.S. 133, 148, 122 S. Ct.

---

[5] "Pl. Dep." refers to the transcript of Plaintiff's deposition conducted on March 19, 2008.  Copies of all pages of transcript cited herein and in Defendant's Reply Memorandum of Law are attached to the Reply Affidavit of  Greg Riolo (hereinafter referred to as "Riolo Reply Aff.") as Exhibit B.

2098, 2019 (2000).  However, Plaintiff ignores the Second Circuit's decision in Schnabel v.

Abramson, 232 F.3d 83, 90 (2d Cir. 2000), wherein the court held that:

> following Reeves, we decline to hold that no defendant may
> succeed on a summary judgment motion so long as the plaintiff
> has established a prima facie case and presented evidence of
> pretext.   Rather ... Reeves clearly mandates a case-by-case
> approach, with a court examining the entire record to determine
> whether the plaintiff could satisfy the "ultimate burden of
> persuading the trier of fact that the defendant intentionally
> discriminated against the plaintiff."

Id.

In following the case-by-case approach discussed in Schnabel, this Court must

grant Defendant's motion as Plaintiff has not presented any evidence that would allow a rational

fact-finder to conclude that Mediacom's proffered reason for terminating Plaintiff's employment

is merely a pretext for intentional disability discrimination.  Thus, Plaintiff has not met her

burden under the third step of the McDonnell Douglas analysis and Defendant's summary

judgment motion should be granted.

### A.    Plaintiff's Purported Evidence Of Pretext Is In Fact A Series Of Conclusory Statements Unsupported By Facts.

Plaintiff has not presented any evidence supporting her claim that Mediacom's

proffered reason for terminating her employment is pretextual.   Instead, she relies on her

subjective belief and conclusory statements of fact which are insufficient to defeat Defendant's

motion for summary judgment as a matter of law.  See Davis v. New York, 316 F.3d 93, 100 (2d

Cir. 2002); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1989) ("To allow a party to defeat a

motion for summary judgment by offering purely conclusory allegations of discrimination,

absent any concrete particulars, would necessitate a trial in all Title VII cases."); Lediju v. New

York City Dep't of Sanitation, 95-cv-9942, 1997 U.S. Dist. LEXIS 12406, at *25-26 (S.D.N.Y.

Mar. 26, 1997) ("Plaintiff's speculation and generalities [are] insufficient to state a prima facie

case under <u>McDonnell Douglas</u>' first prong."); <u>Shabat v. Blue Cross Blue Shield</u>, 925 F. Supp. 977, 988 (W.D.N.Y. 1996), <u>aff'd. without op.</u>, 108 F.3d 1370 (2d Cir. 1997) (citation omitted) ("It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate non-discriminatory reason."); <u>Warren v. Quality Servs. Corp.</u>, 603 F. Supp. 1174, 1181 (W.D.N.Y. 1985) ("The granting of summary judgment is not precluded by plaintiff's conclusory opinion, however sincere, that he was the victim of . . . discrimination.")

Specifically, Plaintiff alleges that upon her return from leave, many of Mediacom's employees ignored her and no longer engaged in conversation. (Cutro Aff. Ex. A, Pl. Dep. 192-93, 200-01, Complaint at ¶ 14). Plaintiff argues that the proximity of this alleged change in treatment to her return from leave is sufficient to support an inference of discrimination. On their face, Plaintiff's claims are insufficient to support a claim of actionable discrimination. <u>See</u> <u>Carpenter v. City of Torrington</u>, 03-cv-9194, 2004 U.S. App. LEXIS 11534, at *4 (2d Cir. Jun. 10, 2004) <u>citing</u> <u>Sanders v. New York City Human Res. Admin.</u>, 361 F.3d 749, 755 (2d Cir. 2004) (holding that an employee's claim that she was receiving the silent treatment is insufficient to show that she suffered any actionable discrimination); <u>see also</u> <u>Brown v. Henderson</u>, 257 F.3d 246, 256 (2d Cir. 2001); <u>Alfano v. Costello</u>, 294 F.3d 365, 377(2d Cir. 2002) (acknowledging that while many bosses are harsh, it is important to exclude from a discrimination analysis decisions or actions lacking a link to claimed ground of discrimination). Other than her subjective belief, Plaintiff offers no evidence that she was a victim of discrimination. <u>See</u> <u>Khan v. Federal Reserve Bank</u>, 02-cv-8893, 2005 U.S. Dist. LEXIS 1543, at *28 (S.D.N.Y. February 2, 2007) (holding that a Plaintiff's conclusory allegations of being

shouted at or excluded as a result of her religion are insufficient to defeat a summary judgment motion); see also Bickerstaff v. Vassar College, 196 F.3d 435, 451-52, (2d Cir. 1999). Further, it is uncontroverted that even after her return from her two month leave, Plaintiff was given whatever time she needed and paid in full for whatever time off she needed to treat her illness.

Plaintiff also relies on one or two statements by Ms. Burgos regarding Plaintiff's entitlement to additional time off after her return from leave. As a threshold matter, Plaintiff claims that Ms. Burgos' actions are part of a continuing pattern of discrimination and not just the stray comments of a non-decision maker. However, Plaintiff is unable to point to any other event to support her theory of a continued pattern of discrimination. Furthermore, Ms. Burgos did not prevent Plaintiff from scheduling or taking the leave she required in order to seek medical treatment. (Pl. Dep. 154). Rather, Ms. Burgos made statements regarding Plaintiff taking additional paid leave after her two month leave. When Plaintiff complained about Ms. Burgos not paying her for time off, Mediacom immediately corrected Ms. Burgos and permitted Plaintiff to take off work with pay whenever she needed. Mr. Brian Walsh, Mediacom's Chief Financial Officer and Ms. Burgos' supervisor, stated that Plaintiff would be entitled to full pay for any work time she missed to seek treatment for her illness. (Pl. Dep. 101).

Plaintiff also points to alleged comments made by Mediacom's President. Plaintiff testified that she overhead another employee state that the "big boss" did not "feel comfortable" paying costs for new employees. (Pl. Dep. 189-191). Plaintiff attempts to expand that comment as evidence of a discriminatory bias to support her claim that her termination was based on her disability. As a threshold matter, and as more fully discussed in Mediacom's principal memorandum of law, the comments that Plaintiff relies upon are inadmissible hearsay. Assuming *arguendo* that the comments are admissible, they do not support Plaintiff's assertion

10

that Mediacom's reason for terminating her employment is a pretext for discrimination. Mediacom's treatment of Plaintiff belies any inference of discrimination. At no time during Plaintiff's employment did she lose any money as a result of her illness or the treatment thereof. Every one of Plaintiff's requests for accommodation was granted, and although not eligible for leave under the Family and Medical Leave Act, she was afforded two months' leave for treatment. When Ms. Burgos denied her paid leave time after her return from her two month leave because she believed Plaintiff was not entitled to her full pay while attending her doctor's appointments, Mediacom's Chief Financial Officer, Marc Stephan, reprimanded Ms. Burgos and informed her that Plaintiff should not lose any pay as a result of her treatment schedule. Further, Plaintiff does not provide any evidence of Mediacom denying her, or any other employee, STD benefits in an effort to cut health care costs. Conversely, it is undisputed that: (1) Plaintiff received twice her entitlement of STD benefits while on leave; and (2) she returned to work for three months and never informed any of her supervisors of the overpayment. Plaintiff cannot establish that her employment was terminated as a cost saving or discriminatory measure, as opposed to her fraudulent and dishonest conduct.

**B.    Plaintiff's Opinion That Her Termination Was Too Harsh A Penalty For Her Fraudulent And Dishonest Conduct Is Irrelevant And Insufficient To Defeat Defendant's Motion For Summary Judgment.**

In her opposition papers, Plaintiff cites Alexander v. Computer Sciences Corp. to argue that "Mediacom's lack of an investigation preceding the proffered business reason for discharge raises an issue of fact as to the pretext that must be decided by a jury." 293 F. Supp. 2d 299 (D. Conn. 2005). Plaintiff's reliance on the Alexander Court's holding is misguided. First, unlike the defendant in Alexander, Mediacom conducted an investigation of Plaintiff's retention of excess STD benefits. As detailed in Defendant's principal memorandum of law,

upon learning of the STD benefits overpayment, Ms. Mills contacted Steve Rubin, Mediacom's intermediary to Aetna, to investigate the allegations.    (Mills Dep. 39-40).[6]    After the overpayment was confirmed, Ms. Mills interviewed Plaintiff about the allegations.  During the interview, Plaintiff admitted that she knew that "there was something wrong with the payment" and claimed to have contacted Aetna to confirm the overpayment. (Pl. Dep. 167).   Further, and most importantly, Plaintiff never informed her supervisors about the overpayment at any time. Leaving a generic message, as Plaintiff claims she did, was simply insufficient.   Based on Plaintiff's admissions and her position of trust in the Payroll Department, Defendant terminated Plaintiff's employment.

Second, the court in Alexander based its decision that an investigation was necessary on the fact that the termination decision relied upon an unsubstantiated oral report. Here, there is no dispute as to the facts regarding the overpayment and thus, no need to further investigate.  Plaintiff admittedly received $3,987.16 in excess STD benefits, returned to work for three months, and did not tell any of her supervisors about the overpayment.  While Plaintiff may think, in her opinion, that a lesser punishment was warranted, the harshness of the decision does not make it discriminatory.  Further, the employer in Alexander repeatedly offered inconsistent justifications for termination.  The Alexander Court held that the inconsistent justifications for the adverse employment action constituted evidence of discrimination.   In the present case, Mediacom has consistently maintained that it terminated Plaintiff's employment as a result of her failure to report the STD overpayment she received from Aetna.

---

[6]        "Mills Dep." refers to the transcript of Judy Mills' deposition conducted on March 17, 2008.  Copies of all pages of transcript cited herein are attached to the Riolo Reply Aff. as Exhibit C.

12

## CONCLUSION

For the foregoing reasons, and those set forth in Defendant's principal memorandum, Defendant respectfully requests this Court to grant its motion for summary judgment and dismiss Plaintiff's Complaint in its entirety.

Respectfully submitted,

JACKSON LEWIS LLP
One North Broadway
White Plains, New York 10601

Greg Riolo (GR 1634)
Michael A. Frankel (MF 9712)

ATTORNEYS FOR DEFENDANT
MEDIACOM COMMUNICATIONS
CORPORATION

Dated: White Plains, New York
         July 3, 2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

MIRIAM BAUZA,

                Plaintiff,         : Case No. 07 CIV. 6542 (CLB)

     - against -

MEDIACOM COMMUNICATIONS CORPORATION,

              Defendant.

-----------------------------------------------------------------------X

## CERTIFICATE OF SERVICE

       A copy of the foregoing Reply Memorandum of Law was filed via ECF and was

served via First Class mail, on July 3, 2008 on counsel for Plaintiff at the address below:

                     Craig M. Bonnist, Esq.
                     Bonnist & Cutro, LLP
                     31 Purchase Street, Suite 3-1
                     Rye, New York 10580
                     *Attorneys for Plaintiff*

                     Jonathan M. Kozak, Esq.

14