# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MIRIAM BAUZA,                                    :
                                                 :
                    Plaintiff,                   : Case No. 07 CIV. 6542 (CLB)
                                                 :
    - against -                                  :
                                                 :
MEDIACOM COMMUNICATIONS CORPORATION,             :
                                                 :
    Defendant.                                   :
------------------------------------------------------------------X

### AFFIDAVIT OF JUDY MILLS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

State of New York      }
                       }ss:
County of Orange       }

Judy Mills, being duly sworn, deposes and says:

1. I am the Director of Human Resources for the Defendant, Mediacom Communications Corporation.

2. This Affidavit is submitted in support of Defendant's Motion for Summary Judgment and in reply to Plaintiff's opposition to Defendant's motion.

3. Plaintiff's opposition papers focus on twelve notices of STD overpayments by Aetna to Mediacom employees. (See Cutro Aff. Exhibit G). Plaintiff alleges that Mediacom discriminated against her by terminating her employment while these other twelve "similarly situated" employees who received an overpayment did not suffer an adverse employment action. However, the circumstances regarding the excess STD payments received by the comparator employees are distinguishable from Plaintiff's STD overpayments in several material aspects.

4. The twelve employees can be classified into two distinct classes. The first class consists of ten of the employees. (See Exhibit G to Riolo Affidavit for the letters to these ten employees). In each of these ten cases, the Mediacom employee in question, while submitting his or her STD application and certification, listed an estimated date of return to work as required by Aetna. However, in each of those situations, the employee returned to work earlier than anticipated while his or her payments continued through a later date.

5. The extra payment amount and the period of overpayment are both referenced in the end of the first paragraph of each Aetna overpayment letter. (See Id.). In each of those ten cases, when Aetna was made aware that the employee returned to work, the notice was generated as a matter of routine processing and the overpayment was recouped from the employee.

6. In reviewing the STD payments to the ten employees, the overpayment of STD benefits range from $36.88 to $649.09 and covered overpayments for between *one* day and *nine* days. None of these overpayments resulted in any of the ten employees receiving STD payments greater than their typical pay in any given week. The ten employees who received these minimal overpayments of STD benefits are clearly distinguishable from Plaintiff, an experienced Payroll Supervisor.

7. Plaintiff received more money during her disability leave than she would have received if she was working. Further, Plaintiff failed to report her substantial overpayments during the three (3) months after her return to work. Accordingly, these ten employees are not similarly situated to Plaintiff.

8. The remaining two incidents of overpayment are also easily distinguishable from Plaintiff's overpayment. In one of the two incidents, the employee was overpaid by a sum of **$8.35**. (See Exhibit H to Riolo Affidavit). It was only after Aetna conducted its own audit did it discover that this employee even received an overpayment.

9. Finally, the last comparator upon which Plaintiff places the most emphasis references an overpayment of $2973.00. (See Exhibit H to Riolo Affidavit).

10. However, despite Plaintiff's assertion, this situation is also distinguishable. The employee in question, Dolce Olexo, was a customer service associate. The overpayment occurred as a result of an error by a former employee in the Company's Human Resources Department, Irene Giannesses. Ms.Giannesses inputted the employee's bi-weekly salary as her weekly salary for the purpose of calculating the employee's STD entitlement, leading to the overpayment.

11. The most important distinction between Plaintiff and Ms. Olexo is that Ms. Olexo reported the overpayment to Ms. Giannesses who had made the initial error as soon as Ms. Olexo received the mistaken overpayment.

12. After the overpayment was discovered during an audit conducted after Plaintiff's termination, and as a result of Defendant's concerns over Aetna's administrative controls, the Company contacted Ms. Olexo who had received the overpayment.

13. Ms. Olexo informed me that she had reported the overpayment to her local human resources manager, Ms. Giannesses. I spoke with Ms. Giannesses, who had since left the company, who confirmed that the employee had indeed reported the overpayment to her but that nothing was done by Ms. Giannesses to recoup the money.

Clearly, this employee who came forward regarding her receipt of the overpayment is also distinguishable from Plaintiff.

14. In her opposition, Plaintiff also asserts that Ms. Falto, also an employee in the Payroll Department, was not disciplined when it was suspected by Ms. Burgos that she was not working the overtime for which she was paid.

15. Based on mere supposition, I concluded that there was no way to prove Ms. Burgos' suspicions that Ms. Falto was not working the overtime hours that she claimed to be working. Mediacom could not base disciplinary action on mere suspicion and, as a result, no formal disciplinary action was taken against Ms. Falto.

WHEREFORE, IT IS REQUESTED THAT THE COURT GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISS THE COMPLAINT IN ITS ENTIRETY.

I have read the above fifteen (15) paragraphs and they are true and accurate.

_____
Judy Mills

Sworn to before me this
3 day of July, 2008

_____
Notary Public

JANE C. BELFORD
NOTARY PUBLIC
ULSTER COUNTY
REG. NO. 01BE6041964
MY COMMISSION EXPIRES 5-15-10